A99A0687. COPPOLLA v. THE STATE.

(519 SE2d 494)

SMITH, Judge.

Anthony Brian Coppolla was indicted along with codefendants Andrew Licausi and Reece Scotty Payne on one count each of burglary, aggravated assault, armed robbery, violation of the Georgia Controlled Substances Act, and possession of a firearm during the commission of a crime. Coppolla and Licausi were also indicted on one count each of possession of a firearm by a convicted felon. Coppolla was tried alone and was convicted on all charges, with the exception of the drug charge. His motion for new trial, as amended, was denied, and he appeals. We find no reversible error, and we affirm.

Construed to uphold the jury's verdict, evidence was presented that on October 8, 1996, the victim was visiting his next-door-neighbor when Coppolla knocked at the neighbor's door and asked if the victim was present. The victim walked over to his own trailer with Coppolla, and after they entered the victim's living room, he saw that Coppolla was carrying a gun on a strap. Coppolla asked, in a sarcastic tone, "You got my money, b----?" The victim, who owed

Coppolla $200, explained that he did not have the money, and Coppolla responded, "Well, I'm going to take your s----." The victim testified that Coppolla pointed the gun at his head. While Coppolla held the gun and stayed inside with the victim, three other men began taking items from the home to a car outside. These items included compact discs, a television, a stereo, four stereo speakers, a telephone, a caller identification machine, a jacket, and a video game system.

Meanwhile, the neighbor whom the victim had been visiting looked out of her window after she heard "banging" outside and saw someone standing on the victim's porch. She also saw Coppolla standing in the living room while the victim sat on the couch. At the time, she believed Coppolla was carrying a night stick, but after Coppolla walked outside, she realized he had a gun when he raised it up, pointing it at the victim, as if "to show [the victim] that he didn't need to go" anywhere. The men inside the trailer, with the exception of the victim, left in two cars. The police were called by this neighbor and arrived a short time after the men left the victim's home.

Police officers immediately began searching for the two vehicles as described by witnesses at the scene: a "gray and primer Z24 Chevrolet Cavalier" and a blue Toyota Celica. One officer observed the Chevrolet but lost sight of it; however, another officer, James Koury, did stop the Celica. Koury identified Coppolla as one of three individuals inside the car. He searched Coppolla and found a television remote control. A search of the car by other officers revealed a mag light, handcuffs, a television, and stereo speakers. A gun was found outside the passenger side door on the ground. The officer who found it stated that as he "opened the window, it just dropped on the ground." He described it as a "Mach 11," equipped with laser sights. The officer who transported the three suspects to jail testified that the men sat in the back seat of his patrol car, while he drove, and he noticed "a lot of movement, a lot of fumbling around going on in the back." After the suspects exited the car at the jail, this officer "pulled up the back seat" and discovered a vial containing a substance later identified at trial as cocaine.

The State also presented the testimony of William Williams, who stated that he and two friends, Scotty Payne and Andrew "Drew" Licuasi, went to an apartment, where they met Coppolla on October 8, 1996. Coppolla asked them if they wanted to help him "move" a stereo. They drove in two separate cars to a trailer park. Payne drove a Toyota Celica, with Williams and an individual named Charles Page as passengers, and Coppolla and Licausi were in a primer gray Chevrolet Cavalier. Williams testified that Coppolla and Licausi walked inside one of the trailers and returned, saying that "he wasn't there." They went next door, returned with another man, and walked

back inside the trailer. At Coppolla's request, Williams walked onto the porch, and he testified that Coppolla "told me if I ran that he was going to shoot me." Williams saw a man sitting on the couch inside, crying. He also saw Coppolla holding a gun that looked like a machine gun, with a flashlight taped to it. Coppolla told him "to start loading this stuff up in the car. . . . Drew was putting it on the porch, and I was loading it in the car." He stated that after the cars were loaded, he left the scene. Coppolla had given him the keys to the Cavalier and told him and Page to leave.

Payne also testified. He stated he believed he and his friends were going to help Coppolla move a stereo. According to Payne, who sat inside his car, soon after Coppolla and Licausi walked into the trailer with the victim, Williams and Page began carrying stereo equipment and other items from the trailer. While carrying these items from the trailer, Williams appeared frightened and told him "that Tony was robbing this . . . person." Payne stated that after all items were loaded, Williams and Page left the scene in Coppolla's car, and about ten minutes later, he, Licausi, and Coppolla left in his Celica. A short time later, he noticed a police car behind him, and he stated that Coppolla "was wanting to take apart the gun and get the bullets out of the gun" and throw it out the door. The car was then stopped by the police.

1. Coppolla first contends that his character was erroneously placed into evidence during the prosecutor's closing argument and that the trial court erroneously failed to give curative instructions or grant a mistrial.

The victim testified at trial concerning a conversation he had with Coppolla. He said that while the robbery was occurring, he "was being sarcastic" and asked, "Hey, you got a line?" According to the victim, Coppolla then "threw five dollars" and told the victim, "Go, buy you one." The State then moved to prevent Coppolla from eliciting any testimony from the victim concerning the victim's past drug usage. The trial court ruled that Coppolla's counsel could question the victim concerning his general knowledge about drugs, such as his knowledge as to the meaning of "a line" but ruled that counsel could not go into the victim's past usage of drugs.

During closing argument, the prosecutor commented on the victim's testimony that he asked Coppolla for "a line." The prosecutor stated:

> An interesting thing . . . [the victim's] statement about "you got a line I can do," will pretty much have you infer that it's obvious that [the victim] does drugs, uses cocaine. Well, I'll tell you what. If somebody said, "Do you have a line I can do," I wouldn't put out a five-dollar bill and tell them "Go get

yourself one." I have no idea what a line of cocaine would cost. But the Defendant didn't hesitate. So what does that tell you about the Defendant and his knowledge of drugs and the price of drugs?

Coppolla objected and moved for mistrial or curative instructions, arguing that the prosecutor had placed his character into evidence as a result of these comments. The trial court stated to the prosecutor, "You are awful close to putting his character in issue," and the prosecutor replied, "That's as far as I intended to go, Your Honor, and just draw the same inference that the defense wants them to draw about the victim." The prosecutor also pointed out that Coppolla was charged with violation of the Georgia Controlled Substances Act for possession of cocaine and that cocaine had been found "where he was present." The trial court stated, "Just be careful. I'm not going to call the jury's attention to it any more than it already has."

Coppolla argues that the prosecutor impermissibly placed his character into evidence and that "[i]t is blatantly unfair to allow the prosecution to hide the drug use of its witness from the jury, and then make references to inadmissible drug use evidence concerning the defendant." He further contends the trial court was duty bound to either grant a mistrial or give curative instructions. We do not agree with Coppolla that the prosecutor's comments require reversal.

The permissible scope of [closing] argument is vast: counsel may draw from the evidence properly before the factfinder any inference apparently reasonable and legitimate. Counsel should be allowed considerable latitude of speech; and so long as extraneous facts are not injected or improper language used, the trial judge should not interfere. Upon the facts in the record, and upon the deductions the attorney may choose to draw therefrom, an attorney may make almost any form of argument the attorney desires.

(Citations and punctuation omitted.) *Morgan v. State*, 267 Ga. 203-204 (1) (476 SE2d 747) (1996). Here, the prosecutor's comment was a fair inference drawn from the evidence and was relevant to the issues at trial. Some evidence of Coppolla's knowledge of the price of drugs was presented, without objection. Furthermore, he was on trial for violation of the Georgia Controlled Substances Act. The fact that Coppolla was not permitted to inquire about the victim's past drug usage is irrelevant; the victim was not on trial.

2. Coppolla also contends he was denied the right to self-representation. We do not agree. After Coppolla's arrest, an attorney was

appointed to represent him. A short time later, Coppolla filed a pro se motion seeking dismissal or disqualification of counsel. At a hearing on the motion, appointed counsel orally moved to withdraw. Upon questioning by the trial court, Coppolla stated that he no longer needed assistance from "an official of the courts" and that appointed counsel was not the counsel of his choice. The trial court allowed counsel to withdraw and informed Coppolla that "[u]nless you can show me where he's been incompetent or has done something against your interest, you'll not get another attorney appointed" and that the Constitution did not guarantee Coppolla an attorney of his choice. The individual from whom Coppolla desired representation, however, was incarcerated and was not a member of the State Bar of Georgia, and the trial court would not permit him to assist Coppolla as counsel. Although the trial court permitted Coppolla's first appointed counsel to withdraw, the court required the presence of "back-up" counsel, attorney John Sumner, in the courtroom for all further proceedings.

Throughout numerous pre-trial proceedings, Coppolla reiterated his desire for counsel of his own choosing and refused to cooperate with the trial court in its attempts to ensure that Coppolla understood his right to appointed counsel. In response to many questions by the court, Coppolla often replied that he could "not meaningfully participate as I have no assistance of counsel present" or because he had "no assistance of counsel of my choice." He stated that Sumner "doesn't think as I do" and that he did "not accept the counsel that the State appointed."[1] During these pre-trial proceedings the trial court repeatedly advised Coppolla of his right to have appointed counsel present and of the valuable assistance counsel could provide. For example, during one hearing, the court said the following:

> I'm going to advise you that you have the right to have an attorney represent you at that trial. If you cannot afford an attorney, the Court would appoint an attorney to represent you at no cost to you. I'm going to further advise you that an attorney would and could provide you very valuable assistance in preparing for trial and in trying the case, picking a jury and examining and cross examining witnesses. I'm going to further advise you that the Court has designated

---

[1] Also, in one pro se motion, Coppolla stated that "[a]s judges and lawyers are officers of the court, I feel inclined to provide for a separation from such power and rely on those who owe no allegiance to any branch of this government or foreign government to assist me." And during calendar call, the trial court advised Coppolla when his case was scheduled for trial, advised him that he had the right to have an attorney appointed to represent him, and asked Coppolla whether he understood this right. Coppolla responded that he "reserve[d] his right to remain silent."

Mr. John Sumner, who is standing here, to stand by to assist you in any way that you may wish him to assist you. Do you understand that?

Coppolla replied, "I have no use for any State appointed attorney and I'm reserving my right to remain silent." Significantly, when asked whether he wished to proceed without an attorney, Coppolla was silent.

Finally, just prior to trial, the trial court asked Coppolla if he was ready to proceed, and Coppolla said he would "reserve my right to remain silent." The court yet again advised Coppolla of his right to appointed counsel, and after Coppolla stated that he did not "need representation from the State-appointed attorney," the court asked whether Coppolla wished to proceed pro se. Coppolla again responded only that he wished to remain silent. Sumner then testified, upon questioning by the State, that Coppolla had refused all communication with him and that during prior court appearances, he had "tried to make it apparent to him I'm here in any way he needs me." Sumner also stated, however, that he was prepared to represent Coppolla at trial "[a]s best I can be."

After Sumner testified, the trial court again advised Coppolla of his right to appointed counsel, of the assistance that appointed counsel could provide, and of the "grave risk" posed by proceeding without the aid of counsel. The court then told Coppolla that it would ask him questions concerning these rights and that the court would "consider any response to these questions other than 'yes' or 'no' as a yes answer." The court asked whether Coppolla understood his right to have an appointed attorney, and if Coppolla understood that he had the right to represent himself. Coppolla was silent to each of these questions. With respect to the court's final question, the court told Coppolla that it would consider Coppolla's "failure to respond or any response other than 'yes' or 'no' a no answer." Coppolla did not respond to the court's next question of whether Coppolla wished to represent himself "without the assistance of appointed counsel or any counsel." Because Coppolla did not respond, the trial court ruled that Coppolla did not intend to represent himself and instructed Sumner to represent Coppolla as his court appointed attorney. Sumner extensively participated in the entire trial.

It is true that a defendant may waive his or her right to legal representation. See, e.g., *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975). See also *Williams v. State*, 169 Ga. App. 812, 814 (315 SE2d 42) (1984). Coppolla, though, was not denied this right. Although he filed numerous pro se motions, it is clear from the record that he did not seek to represent himself; instead, he desired representation by an individual of his own choosing. But while an

indigent defendant accused of a crime for which imprisonment is possible has the right to the assistance of reasonably effective counsel, the accused "is not entitled to counsel of his own choosing." (Citations and punctuation omitted.) *Reynolds v. State*, 231 Ga. App. 33, 36 (4) (497 SE2d 580) (1998). Furthermore, Coppolla was not entitled to be represented by an individual who was not a member of the State Bar of Georgia. See, e.g., *Mercier v. State*, 203 Ga. App. 494 (2) (417 SE2d 430) (1992).

We recognize that the trial court might have been authorized in this case to conclude that Coppolla's repeated rejection of Sumner as counsel in addition to his insistence on representation by counsel of his own choosing "was the functional equivalent of a knowing and voluntary waiver of counsel." (Punctuation omitted.) Id. at 494-495 (2). See also *Gamble v. State*, 235 Ga. App. 777, 781-782 (4) (510 SE2d 69) (1998); *Staples v. State*, 209 Ga. App. 802, 804 (3) (434 SE2d 757) (1993). But we conclude that under the facts of this case, the trial court was not *required* to permit Coppolla to proceed pro se. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Citations and punctuation omitted.) *Williams v. State*, 183 Ga. App. 373, 374 (1) (358 SE2d 914) (1987). Coppolla repeatedly insisted on representation by counsel of his own choosing and insisted on his right to remain silent even in the face of questions that clearly were not designed to elicit inculpatory responses. We conclude from this behavior that he engaged in "dilatory tactics calculated to disrupt the proceedings against him, and hence the trial court's refusal to allow defendant to proceed pro se does not constitute reversible error." (Citation and punctuation omitted.) Id. Furthermore, as discussed above, Coppolla refused to respond to the trial court's question of whether he desired to proceed pro se, after the trial court specifically told him that a failure to respond would be deemed a negative answer. Under these circumstances, we conclude that Coppolla knowingly and voluntarily waived his right to represent himself.

3. Coppolla contends he was denied his right to cross-examine the victim concerning pending arrest warrants for traffic violations and his competency to testify. During trial, the State moved to exclude evidence of pending arrest warrants for traffic violations, and as discussed above, to exclude evidence of past drug use. The trial court did not permit Coppolla to question the victim concerning past drug usage but allowed limited inquiry concerning the victim's knowledge of terminology relating to drug use. The court did not, however, allow Coppolla to question the victim concerning the alleged warrants.

(a) Coppolla sought to question the victim concerning the pending warrants in an effort to show his bias; he wanted to ask the victim whether he was attempting to garner favor with the prosecutor by testifying. We agree with Coppolla that the court should have permitted this inquiry.

> Under the Sixth Amendment . . . the defendant in a criminal case has both the general right to cross-examine witnesses against him and the more specific right to cross-examine a key State's witness concerning pending criminal charges against the witness. Although the extent of cross-examination is within the sound discretion of the trial court, cutting off all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination was an abuse of discretion.

(Citations and punctuation omitted.) *Garcia v. State*, 267 Ga. 257, 259 (7) (477 SE2d 112) (1996). But here, as in *Garcia*, "[i]t does not necessarily follow" that error mandates reversal. Id. Testimony by more than one eyewitness showed that Coppolla was a party to the crimes and that he held the victim at gunpoint while the victim's property was taken from his home. Moreover, the victim's credibility was impeached by his own question to Coppolla concerning a "line" of cocaine. Given the overwhelming evidence of Coppolla's guilt, "we find the trial court's erroneous curtailment of [Coppolla's] cross-examination of the state's witness was harmless. [Cit.]" Id.

(b) Coppolla contends that cross-examination of the victim concerning the victim's drug use was relevant to show his competency. He does not contend, however, that the victim was under the influence of drugs at trial, which may have affected his ability to understand his obligation to tell the truth and provide material evidence concerning the burglary. Instead, the import of his argument, both here and in the trial court, is that the victim may have been using drugs at the time of the burglary, a fact that may have affected his competency at *that* time. We find no merit in this contention, for the state of mind of a witness at the time of the crime would affect his or her credibility, rather than competency to testify at the time of trial. See *Whitus v. State*, 222 Ga. 103, 110 (2) (149 SE2d 130) (1966), rev'd on other grounds, 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1967).

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 16, 1999.

*John B. Sumner*, for appellant.

*Garry T. Moss, District Attorney, Cecelia Harris, Assistant District Attorney,* for appellee.