## A02A1213. GEIGER v. THE STATE.

(573 SE2d 85)

JOHNSON, Presiding Judge.

Stephen Roger Geiger was convicted of one count of aggravated child molestation and two counts of child molestation. He appeals from his convictions, arguing that the evidence was insufficient to support the verdict, his trial counsel provided ineffective assistance, the trial court improperly denied him an opportunity to conduct sequestered voir dire of each juror, and the trial court erred in overruling his objection to the police officer reading into evidence a statement written by police and signed by the victim. None of the enumerations has merit, so we affirm his convictions.

1. Geiger claims the trial court erred in denying his motion for a directed verdict of acquittal when the victim was not credible and the evidence against him was vague and "varied in material respects."

On appeal from a criminal conviction, the evidence is construed in a light most favorable to the jury's verdict, and the appellant no longer enjoys the presumption of innocence.[1] The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for a challenge to the sufficiency of the evidence: conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve, and as long as there is some competent evidence to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[2]

So viewed, the evidence shows the following. The victim was four

---

[1] *Smith v. State,* 237 Ga. App. 616-617 (1) (516 SE2d 319) (1999).
[2] Id. at 617 (1).

years old when her mother married Geiger. The family lived together in Gwinnett County for the next ten years. According to the victim, Geiger began molesting her when she was about ten years old. The victim told the jury how Geiger placed his hands between her legs and showed her how to masturbate. He would also lie on the floor with her, sometimes while they were nude, place a blanket over her and touch her vagina. Geiger also rubbed his penis against and placed his tongue inside her vagina. These events occurred on a daily or weekly basis until the victim was about 14 years old.

When she was 14, the victim wrote a note to her boyfriend about the molestation. The note was found at school and given to the school counselor. When the counselor asked the victim about the allegations in the note, the victim denied that anything had happened, but was very upset and threatened suicide. The next morning, the two talked again. The victim told the counselor she wanted to tell her something, but could not. At the counselor's suggestion, the victim wrote a note to the counselor. In it, she indicated that Geiger had been molesting her. The counselor notified a school police officer, who conducted an initial and then a videotaped interview of the victim. In the videotaped interview, which was played at trial, the victim described the acts Geiger had committed against her. The victim was placed in foster care. While in foster care, she was interviewed by a police officer. Based on what the victim told him, he prepared a written statement, which the victim reviewed and signed. In the statement, the victim described the acts committed by Geiger. The officer read the statement at trial.

About a year or so before telling the counselor about the molestation, the victim had confided to her best friend that her stepfather had been molesting her. The friend testified that it was not unusual to be visiting the victim at home and see Geiger and the victim's other family members without clothes on, because both families were nudists and frequently visited a nudist resort. The victim and her mother also testified that the family regularly visited a nudist resort.

Geiger argues that the evidence was vague regarding where the alleged acts of molestation occurred and where the victim was when she told her friend about the offenses, that the witnesses' statements "varied in material respects," and that the victim was not credible because she only made the allegations when she thought she was going to get in trouble for writing the first note. But it is the jury's duty to resolve conflicts in the evidence, and its findings of credibility and fact will not be disturbed on appeal unless they are clearly erroneous.[3] The evidence was sufficient to enable a rational trier of fact to

---

[3] See *Eichelberger v. State*, 252 Ga. App. 801 (557 SE2d 439) (2001).

find Geiger guilty of the offenses charged beyond a reasonable doubt.[4]

2. Geiger contends the trial court erred in denying his request for sequestered voir dire of each juror. He claims that he needed to ask each juror, in private, what he or she thought about nudism and nudist camps because the jurors might be embarrassed to discuss the issue honestly in a group setting. The trial court told counsel that he could ask the entire panel if anyone is now or ever has been a practicing nudist; then, after the jurors were sent out on a break, the court would bring the jurors back in individually as needed and allow counsel to ask each juror follow-up questions outside of the presence of the other jurors. The trial court did not err in refusing to allow counsel to sequester each juror before posing questions to the panel as a whole.

Although a defendant has a right to individualized *responses* from each member of the panel, he is not entitled to question each juror individually.[5] The granting of sequestered voir dire is within the discretion of the trial court, and a showing of prejudice from denial is necessary to show an abuse of discretion.[6] While the trial court denied Geiger's request to have sequestered individual voir dire before addressing his questions to the entire panel, the court did permit Geiger to individually examine each juror if he believed that additional questions were necessary. Geiger has not shown that any prejudice resulted from the denial of his request. Because Geiger has not shown any abuse of discretion, this enumeration presents no basis for reversal.

3. Geiger complains that he was denied effective assistance of trial counsel. He lists 11 alleged errors in this regard, none of which has merit.

In order to establish a claim of ineffective assistance of counsel, an appellant must show (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense to the extent that there is a reasonable probability that, but for the unprofessional conduct of counsel, the outcome of the trial would have been different.[7] There is a strong presumption that counsel's performance fell within a range of reasonable professional conduct and that his decisions were made in the exercise of reasonable professional judgment.[8] Furthermore, the trial court's determination that an appel-

---

[4] See *Higgins v. State*, 251 Ga. App. 175, 176 (1) (554 SE2d 212) (2001).
[5] *Walker v. State*, 271 Ga. 328, 329 (2) (519 SE2d 670) (1999).
[6] *Sanborn v. State*, 251 Ga. App. 169, 170 (3) (304 SE2d 377) (1983).
[7] *Mitchum v. State*, 274 Ga. 75, 76 (2) (548 SE2d 286) (2001).
[8] *Gordon v. State*, 273 Ga. 373, 379 (4) (f) (541 SE2d 376) (2001).

lant has been afforded effective assistance of counsel must be upheld unless clearly erroneous.[9]

(a) In several enumerations, Geiger contends that trial counsel was ineffective because he did not object to or move in limine to exclude evidence that Geiger and his family were nudists. He urges that the evidence was not relevant to the charges and was unduly prejudicial.

At the hearing on the motion for a new trial, trial counsel testified that he decided not to object to the evidence because objecting repeatedly would draw attention to the evidence and do his client a disservice. Trial counsel also stated that even though the evidence might be prejudicial, he believed it could be used to Geiger's advantage and to "take the sting out of [the best friend's] testimony." For instance, the victim's friend testified that she had been in the victim's home and sometimes saw Geiger lying in bed with the victim. Sometimes they were nude. The friend thought nothing of it because "we were nudists. That's how we were brought up." In addition, the victim had told police that Geiger had purple marks on his buttocks and on the inside of his leg. Evidence that the family practiced nudism provided a noninculpatory explanation for how the victim knew the physical characteristics of the private areas of Geiger's body, and for why she was seen naked with him. Thus, the evidence may have helped rather than harmed Geiger.

"Judicial review of counsel's performance should be highly deferential with substantial latitude given trial counsel in deciding trial strategy."[10] Geiger has not shown that counsel's strategic decisions demonstrated a lack of reasonable professional assistance or prejudiced his defense. Likewise, counsel was not ineffective for failing to object to the prosecutor's reference to the family's practice of nudism in his opening statement.[11]

(b) Geiger's claim that counsel was ineffective for failing to move for a continuance in order to investigate the subject of nudism, interview witnesses, and prepare a defense to deal with the subject is also without merit. At the hearing on the motion for a new trial, trial counsel testified that he gave the nudism issue a great deal of thought before trial, researched it, and discussed it with Geiger and the prosecutor. As discussed above, trial counsel made a strategic decision to allow the testimony. Geiger has not shown that, due to

---

[9] *Ross v. State*, 231 Ga. App. 793, 795 (1) (499 SE2d 642) (1998).

[10] (Citation and punctuation omitted.) *Stansell v. State*, 270 Ga. 147, 149 (2) (510 SE2d 292) (1998).

[11] See generally *Hill v. State*, 272 Ga. 805, 806 (2) (537 SE2d 75) (2000).

lack of preparation, counsel's representation fell below an objective standard of reasonableness.[12]

(c) Nor has Geiger shown that trial counsel was ineffective for failing to object to the prosecutor's statement in closing regarding nudism. In his closing argument, the prosecutor remarked that Geiger had conditioned his family to believe that nudism is "okay," and that although it is "not a crime for adults to [practice nudism] . . . it's wrong" to raise a child in that environment. According to Geiger, the argument improperly introduced new evidence and appealed to the passions and prejudices of the jury. Geiger has not shown ineffective assistance.

Attorneys are allowed considerable latitude in making closing arguments, and they may draw any inference from the evidence so long as that inference is both reasonable and legitimate.[13] Geiger testified that he and his wife began practicing nudism when the victim was about seven years old, that they began taking her to nudist camp on the weekends, that he did not think it was inappropriate for children to be exposed to nude adults, that he did not think it was inappropriate for him to be nude around the victim's teenage friend, and that he saw nothing wrong with walking around the home nude. The victim's mother testified that the family visited the nudist camp every weekend for several years and that Geiger was usually nude at home, but that she usually wore clothing and did not feel comfortable with nudity at home.

It was a reasonable, legitimate inference from the evidence that Geiger had conditioned his family to believe nudism was "okay." And, given the wide latitude allowed counsel in closing argument, we do not find reversible error in the prosecutor's remark that it is "wrong" to raise a child in the environment which existed in Geiger's home, which included Geiger · and his adolescent stepdaughter lying together nude. Geiger has not shown by the record that a reasonable probability exists that the result of the trial would have been different if the state had not argued that he conditioned his family to believe nudity was "okay," or that it was wrong.[14] If Geiger was not prejudiced by the argument, he was not prejudiced by his trial counsel's failure to object to the argument.[15]

(d) Defense counsel was not ineffective for failing to object to Geiger's ex-wife's testimony that Geiger had been incarcerated. The victim's mother testified that after the victim reported the molestation, the child was placed in a foster home and Geiger left home. The pros-

---

[12] See generally *In the Interest of S. U.*, 232 Ga. App. 798, 801 (2) (503 SE2d 66) (1998).
[13] *Igidi v. State*, 251 Ga. App. 581, 589 (6) (c) (554 SE2d 773) (2001).
[14] See generally *Mency v. State*, 228 Ga. App. 640, 648 (2) (i) (492 SE2d 692) (1997).
[15] See id.

ecutor asked the mother what happened to the victim after that. The witness replied: "I was allowed to have her back after [Geiger] was incarcerated." This was the only reference to his incarceration.

A minor reference to a defendant's incarceration on the instant charge does not place his character in issue.[16] Therefore, counsel was not ineffective for failing to object to the remark.

(e) Geiger contends he received ineffective assistance because trial counsel did not ask for curative instructions after his sustained objection to the school guidance counselor's statement that "I had felt like [the victim] was not telling me the whole truth the day before, just how upset she got." Although opinion evidence about the credibility of a witness is generally inadmissible,[17] under the circumstances of this case we find no error.

In the context in which it was given, the counselor's statement was not a clear comment on the victim's credibility. The transcript shows that the comment was made in the following context: The counselor testified that a teacher brought her a note written by the victim to a friend. The counselor called the victim out of class and asked her about the contents of the note. The victim hesitated and denied that the allegations contained in the note were true. As the two continued talking, the victim threatened to commit suicide. The conversation continued, and then they agreed that the counselor would not talk to the victim's parents until later that night. The counselor testified about her conversation with Geiger that evening when he came to pick the victim up from a track meet. The prosecutor then asked the counselor if she saw the victim the next morning. The witness replied that she did. When asked what the circumstances were, the witness stated: "I had felt like she wasn't telling me the whole truth the day before, just how upset she was." Defense counsel objected "to what she felt like with this child," and the objection was sustained.

In our opinion, it is not clear to which statement or statements the witness was referring — the victim's statements in the note, or her statements in the conversations regarding the note. Nor is it clear whether the witness' comment implied that the victim was credible or not credible; the comment could be interpreted favorably to either the defense or the prosecution. At the hearing on the motion for a new trial, the trial judge remarked that he did not give curative instructions because the counselor's remark about "the way she felt" was quickly objected to and inconsequential. As given, the counselor's testimony simply did not usurp the jury's authority on the issue of

[16] *Deal v. State*, 233 Ga. App. 79, 82 (8) (503 SE2d 288) (1998).

[17] *Helton v. State*, 217 Ga. App. 691, 693 (4) (458 SE2d 872) (1995).

credibility.[18] Geiger has not shown that counsel's performance was deficient or that he was prejudiced by counsel's failure to request curative instructions or a mistrial regarding this comment.

(f) Geiger complains that trial counsel was ineffective because he did not object when the state asked the school counselor if she remembered what the victim wrote in her written statement. The best evidence rule, he argues, prohibits the testimony about the written statement.

When the existence of a fact, and not the contents of a writing, is the question at issue, both oral and written evidence of the fact may be admitted as primary evidence.[19] In this case, the essential facts to be proved did not involve the contents of the writing, but the existence of an independent act to which the writing was merely incidental.[20] The testimony about the written statement only explained the circumstances surrounding the victim's reporting the molestation and was not offered to prove the existence of the writing or the truth of its contents. Counsel was not ineffective for failing to object.

(g) Geiger argues that he was denied effective assistance of counsel because defense counsel did not object to the introduction of the victim's videotaped statement to the school police officer when it had been "rehearsed." Geiger does not give a basis for stating that the statement had been rehearsed, though he apparently relies on the fact that the officer had a conversation with the victim just before taping the interview. We find nothing to indicate that the child was coached or was subjected to unduly leading or suggestive interview techniques.[21] Geiger has not shown that counsel was deficient in not objecting to such a procedure.

Citing OCGA § 24-4-48, Geiger implies that the state did not comply with that statute's authentication requirements for videotapes. But that statute applies when an authenticating witness is not available.[22] Here, the officer who conducted the videotaped interview was available. A videotape is admissible where the operator of the machine which produced the tape or one who personally witnessed the events recorded testifies that the videotape accurately portrayed

---

[18] See *Stamey v. State*, 194 Ga. App. 305-306 (1) (a) (390 SE2d 409) (1990). Compare *Guest v. State*, 201 Ga. App. 506, 507 (1) (411 SE2d 364) (1991) (reversible error where police officer testified that his basis for obtaining arrest warrant was that he felt that the victim appeared credible); *Mann v. State*, 252 Ga. App. 70, 72 (555 SE2d 527) (2001) (reversible error where state asked counselor if she found any evidence that the victim was not telling the truth, and witness replied: " '[N]o. I believe he's telling the truth.' ").

[19] *Bellamy v. State*, 243 Ga. App. 575, 580 (3) (530 SE2d 243) (2000).

[20] See generally *Johnson v. State*, 177 Ga. App. 705, 706 (2) (340 SE2d 662) (1986).

[21] See generally *White v. State*, 213 Ga. App. 429, 432 (2) (445 SE2d 309) (1994).

[22] See OCGA § 24-4-48; *Phagan v. State*, 268 Ga. 272, 280-281 (5) (486 SE2d 876) (1997).

what the witness saw take place at the time the events occurred.[23] The officer gave that testimony, so the foundation was adequate.[24]

(h) According to Geiger, trial counsel was ineffective in that he did not move for a mistrial or to strike the testimony of the victim's friend where the testimony was used to bolster the victim's testimony. The statements about which the friend testified were made when the victim was 13 years old, and so were admissible under OCGA § 24-3-16.[25] The statements were also admissible as prior consistent statements, as explained in Division 4, below.

Inasmuch as Geiger failed to establish that trial counsel's performance was deficient and that the deficiency was prejudicial, the trial court did not err in concluding that Geiger was not deprived of the effective assistance of counsel at trial.[26]

4. After the victim was taken out of her home, a police detective interviewed her and wrote down what the victim told him. The victim reviewed and signed the statement. Geiger complains that the trial court erred in overruling his objection to the detective's reading of the signed statement to the jury. Admission of a prior consistent statement is permitted where the veracity of a witness' trial testimony has been placed in issue, the witness is present at trial, and the witness is available for cross-examination.[27] The victim's veracity was placed in issue because, as she admitted on cross-examination, she had previously denied the abuse allegations contained in the note found at school. The victim testified at trial, her credibility was at issue, and she was subject to cross-examination. Her written statement was admissible as a prior consistent statement.[28]

5. After filing the notice of appeal in this case, Geiger filed a motion to remand the case so that he may argue in the trial court that his trial counsel was ineffective for not challenging the composition of the traverse jury pool. After trial counsel filed a motion for a new trial, Geiger was appointed new counsel. His new attorney filed an amended motion for new trial, raising numerous enumerations of error, including several based on ineffective assistance of trial counsel. None of the grounds involved a failure to challenge the composition of the jury pool.

Any ineffective assistance of counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial court so that the challenge

---

[23] See *Phagan*, supra.

[24] See generally *Diaz v. State*, 239 Ga. App. 795 (1) (522 SE2d 242) (1999).

[25] See *Calloway v. State*, 202 Ga. App. 816 (415 SE2d 533) (1992) (trial court's finding of reliability implicit in admission of testimony).

[26] See *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999).

[27] *Frady v. State*, 245 Ga. App. 832, 834 (2) (538 SE2d 893) (2000).

[28] See id.

can be heard at the earliest practicable moment, i.e., during the hearing on the amended motion.[29] Inasmuch as Geiger's appellate counsel could have raised the issue of trial counsel's failure to challenge the constitution of Gwinnett County's jury pool in his amended motion for a new trial, Geiger's motion to remand the case for a consideration of this issue is denied.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 19, 2002 —
RECONSIDERATION DENIED OCTOBER 18, 2002 

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney*, for appellee.

---

[29] See generally *Keanum v. State*, 212 Ga. App. 662, 663 (1) (442 SE2d 790) (1994).