## A05A2269. STEVERSON v. THE STATE.
### (625 SE2d 476)

MIKELL, Judge.

Donnie Hugh Steverson was convicted of aggravated child molestation and was sentenced to serve 30 years in prison. He appeals from the denial of his motion for new trial, arguing that the evidence does not support his conviction; that the prosecutor improperly commented on his character during closing argument; that the victim's prior consistent statement was improperly admitted into evidence; that his character was improperly placed in evidence; and that his trial counsel rendered ineffective assistance. We affirm.

1. Steverson first argues that the trial court erred in denying his motion for a directed verdict of acquittal. We disagree.

"On appeal from a criminal conviction, we view the evidence in a light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[1] Viewed in its proper light, the evidence adduced at trial shows that the victim, K. A., who was 13 years old at the time of the incident, met Steverson, who was then 50 years old, at K. A.'s grandfather's house in the summer of 2001. K. A. testified that he and Steverson became friends. One day in July, K. A.

---

[1] (Footnote omitted.) *Colon v. State,* 275 Ga. App. 73-74 (619 SE2d 773) (2005).

traveled to Baxley with Steverson to look at some land. With his father's permission, K. A. was going to spend the night with Steverson at the home of Steverson's girlfriend, Rebecca Ann "Becky" Bryant. K. A. laid down, clothed, on the sofa in the living room and covered himself with a sheet. He testified that he had almost fallen asleep when he felt his pants and underwear being pulled down. Suddenly, Steverson, who was kneeling on the floor by the sofa, put his mouth on K. A.'s penis. K. A. testified that he put his feet on Steverson's shoulders in an effort to push him away but he would not stop. Bryant walked into the living room and witnessed the incident.

Bryant testified that she had been Steverson's girlfriend for 30 years and that he was living in her apartment at the time of the incident. That night, she had been asleep but woke up when he came home and entered the bedroom. When he left the room, Bryant lay in bed for a few minutes wondering what he was doing. Curious, Bryant got up and walked into the living room, where she saw Steverson kneeling on the floor and "performing oral sex on" K. A. Bryant told Steverson to get out, but he wanted to talk to her. After taking K. A. home, Steverson returned and told her to keep her mouth shut "because my family will not have any respect for me and I don't want to have to kill you." Feeling threatened, Bryant did not report the incident to the police. However, she told an acquaintance, Lisa Walls, who happened to be K. A.'s stepmother. Bryant did not know that fact at the time. A day or two later, Bryant related the incident to K. A.'s father, Terry Walls. Bryant also gave a statement to the police.

After her conversation with Bryant, Lisa Walls confronted K. A. He began to cry but told her that nothing had happened. Later that day, K. A. denied the incident to his father as well. K. A. testified that he initially swore that nothing had happened because he was scared, and he thought that he had done something wrong. However, several days later, Steverson came to the Walls' home, and K. A. ran to his room and hid. He was crying. Lisa Walls did not let Steverson in the house, and when she asked K. A. what was wrong, he said only that he did not want to see Steverson. Two days later, K. A. finally told his father what happened. Terry Walls testified that his son ultimately stated that Steverson undid his clothes, pulled out K. A.'s private area, and put it in his mouth. Terry Walls immediately called the police.

Georgia Bureau of Investigation Special Agent Trent Hillsman interviewed K. A., Lisa Walls, and Bryant. After conducting an investigation, Hillsman arrested Steverson and advised him of his *Miranda* rights. Steverson made a statement. Steverson said that he must have blacked out when he came out of the bathroom in Bryant's apartment and that when he awoke, he was lying at K. A.'s feet and Bryant was yelling at him. He claimed that he was fully clothed. Both

K. A. and Bryant testified that Steverson was wearing only his underwear when he molested the child.

Steverson testified to a different version of events on the night in question. He claimed that K. A. had been leering at Bryant, who was partially clothed, and that he ultimately caught Bryant "playing with him." Steverson claimed that he began yelling at Bryant and that she invited him into her bedroom to "have fun" with her and K. A. On cross-examination, Steverson claimed he had a "dizzy spell" coming out of Bryant's bedroom, blacked out, and awoke when Bryant began yelling at him. Steverson accused Bryant of being a drug addict, and his brother testified that she was a woman of ill repute. Another witness, a man who had lived with Bryant, testified that she threatened to "screw me like she did Donnie"; and that Bryant abused cocaine, drank heavily, and had sexual relations with different men "all the time."

Steverson argues that the evidence is insufficient to support his conviction because Bryant was not a credible witness and K. A. was pressured by his parents to accuse Steverson of molestation. This claim fails, because "[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict."[2] A person commits child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[3] An act of child molestation becomes "aggravated" when it "physically injures the child or involves an act of sodomy."[4] "Sodomy" is defined as a "sexual act involving the sex organs of one person and the mouth or anus of another."[5] In the case at bar, there was competent evidence to support each element necessary to make out the state's case. Therefore, the jury's verdict is upheld.[6]

2. Steverson next contends that the trial court erred in denying his motion for a new trial because the prosecutor purportedly made statements concerning his character during closing argument. However, the record shows that Steverson interposed no objection to the argument at the time it was made. "An objection to improper closing

---

[2] (Footnotes omitted.) Id. at 74. See also *Dorsey v. State*, 265 Ga. App. 404, 405 (1) (593 SE2d 945) (2004) (testimony of victim alone sufficient to authorize conviction of aggravated child molestation).

[3] OCGA § 16-6-4 (a).

[4] OCGA § 16-6-4 (c).

[5] OCGA § 16-6-2 (a).

[6] See *Neal v. State*, 271 Ga. App. 283, 285 (1) (609 SE2d 204) (2005).

argument must be voiced when the alleged impropriety occurs at trial in order that the trial court may take remedial action, if necessary."[7] It follows that Steverson has waived any objection to the prosecutor's closing argument by failing to raise it at trial.[8]

3. Steverson next complains that the trial court erred in denying his motion in limine to exclude K. A.'s prior consistent statements to his parents. Following a pretrial hearing, the trial court ruled that the circumstances of the statements provided sufficient indicia of reliability to warrant their admission under OCGA § 24-3-16. The "trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion."[9] Moreover, in determining whether the court abused its discretion, the appellate court can consider evidence adduced at trial as well as that offered at the pretrial hearing.[10]

OCGA § 24-3-16, the Child Hearsay Statute, permits certain statements made by children under 14 years of age to be admitted into evidence through the testimony of the person to whom the statement was made. The statement must describe sexual contact or physical abuse performed with or on the child, the child must be available to testify, and the trial court must find that the circumstances under which the statement was made provide sufficient indicia of reliability. In making the reliability determination, the trial court may consider, but is not limited to, any of the following factors:

(1) the atmosphere and circumstances under which the statement was made . . . ; (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement . . . and (10) the consistency between repeated out-of-court statements by the child.[11]

[7] (Citation omitted.) *Metts v. State*, 270 Ga. 481, 484 (4) (511 SE2d 508) (1999) (except in death penalty cases, defendant's failure to object to the state's closing argument waives any alleged error therein); see also *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999).

[8] See *Brown v. State*, 278 Ga. 544, 547 (6) (604 SE2d 503) (2004).

[9] (Citation and punctuation omitted.) *Fiek v. State*, 266 Ga. App. 523, 524 (1) (597 SE2d 585) (2004).

[10] See *Gregg v. State*, 201 Ga. App. 238, 239-240 (3) (a) (411 SE2d 65) (1991).

[11] (Citations and emphasis omitted.) Id. at 240 (3) (b).

In the case at bar, Steverson argues that the trial court abused its discretion in finding that the circumstances of the child's statements provided sufficient indicia of reliability. Steverson contends that the circumstances under which the child admitted the molestation to his parents were unreliable because he made the admissions only after being threatened with having to face Bryant. This circumstance is not sufficient to show that the trial court abused its discretion in admitting the statements. The child was present at trial and testified on direct examination as to why he first denied the molestation when confronted by his parents and then why he finally admitted it. "Therefore, defense counsel had the opportunity to cross-examine the child and allow the judge to observe the child's demeanor in response to questions about the making and veracity of these statements."[12] Accordingly, applying the factors enumerated above, we find that the evidence at trial provided sufficient indicia of reliability of K. A.'s statements to his parents to satisfy the requirements of OCGA § 24-3-16. It follows the trial court did not abuse its discretion in denying Steverson's motion in limine to exclude them.

4. Steverson next argues that the trial court erred in denying his motion in limine to exclude testimony concerning his drinking alcohol on the night of the incident, contending that such testimony impermissibly injected his character in evidence. In this regard, the record shows that although the court ruled two such statements admissible, only one was introduced into evidence. In his statement to Hillsman, Steverson said that he told Terry Walls that he did not want K. A. to spend the night with him because he had had "a couple of drinks." "[T]he consumption of alcohol by an adult is irrelevant to the issue of character."[13] It follows that the trial court did not abuse its discretion in refusing to redact this admission from Steverson's statement.

5. Finally, Steverson asserts that his trial counsel rendered ineffective assistance because he failed to interview and subpoena certain witnesses and failed to object to the prosecutor's closing argument. In order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, the outcome of the trial would have been different.[14] "A conviction will not be reversed on the basis of ineffective assistance of counsel unless

---

[12] (Citations omitted.) *Flowers v. State*, 255 Ga. App. 660, 663 (3) (566 SE2d 339) (2002).

[13] *Davis v. State*, 272 Ga. 327, 334 (3), n. 26 (528 SE2d 800) (2000), citing *Mungin v. State*, 183 Ga. App. 290, 291 (3) (358 SE2d 673) (1987).

[14] *Blocker v. State*, 265 Ga. App. 846, 849 (4) (595 SE2d 654) (2004).

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[15] Finally, a trial court's finding that a defendant has not been denied effective assistance of trial counsel must be upheld unless it is clearly erroneous.[16]

(a) In the case at bar, trial counsel testified at the hearing on the motion for new trial that he met with Steverson seventeen times, at least fifteen of which were for trial preparation, and that Steverson supplied him with the names of four potential witnesses, including Bryant. Trial counsel testified that he interviewed all of the witnesses except a man named Parlor, and counsel explained his reasons for not calling each witness to the stand. According to trial counsel's notes from his discussion with Steverson, Parlor and his wife saw Steverson have a blackout and fall out of a chair during the summer of 2001. Counsel testified that he did not subpoena the Parlors because he determined that the blackout theory was "absurd" and did not plan to pursue it at trial. Rather, his defense was to discredit Bryant and portray her as evil, spiteful, and manipulative. However, counsel did obtain a mental evaluation for Steverson, and the examining physician found no mental illness.

Steverson argues that trial counsel's "complete lack of interest and investigation into the witnesses he provided caused him not to be able to corroborate his defense at trial." However, as noted above, trial counsel did investigate and present witnesses who discredited Bryant, which was the true defense theory. Moreover, Steverson initially testified at trial that he caught the victim and Bryant together, not that he blacked out. "Deciding which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[17] It follows that the trial court's determination that trial counsel made a strategic decision not to subpoena the Parlors is not clearly erroneous.[18]

(b) Steverson next argues that trial counsel should have objected and moved for a mistrial when, during closing argument, the prosecutor stated that she wished she could bring in church-going witnesses to "tell you that they witnessed a horrible act of child molestation in this county. But I can't do it because people that are hanging around with Donnie Steverson are not Sunday School teachers. Becky Bryant, she's all we have." Steverson argues that the comment

---

[15] (Citation and punctuation omitted.) *Sewell v. State*, 229 Ga. App. 685, 687 (1) (494 SE2d 512) (1997).

[16] See *Miller v. State*, 271 Ga. App. 524, 526 (3) (610 SE2d 156) (2005).

[17] (Punctuation and footnote omitted.) *Williams v. State*, 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).

[18] Id.

about the type of people with whom he associates improperly placed his character in issue. We disagree. "Attorneys are allowed considerable latitude in making closing arguments, and they may draw any inference from the evidence so long as that inference is both reasonable and legitimate."[19] Here, the prosecutor's comment was a fair inference drawn from the evidence. Steverson testified that he and Bryant lived together for periods of time; that Bryant was a thief and a drug user; and that she had a violent temper. Other defense witnesses testified to Bryant's bad character. Trial counsel testified that he did not object to the prosecutor's closing argument because Steverson had "already admitted that he hangs around with a whore, a prostitute, and a drug . . . user." Because the prosecutor's comment was a reasonable, legitimate comment on the evidence, trial counsel was not deficient for failing to object to it.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 14, 2005.

*Stephen E. Tillman*, for appellant.

*Stephen D. Kelley, District Attorney, John B. Johnson III, Leslie K. DeVooght, Assistant District Attorneys*, for appellee.

---

[19] (Footnote omitted.) *Geiger v. State*, 258 Ga. App. 57, 61 (3) (c) (573 SE2d 85) (2002). Accord *Coppolla v. State*, 238 Ga. App. 567, 570 (1) (519 SE2d 494) (1999). See also *Harris v. State*, 279 Ga. 522, 525 (4) (615 SE2d 532) (2005) (failure to object to prosecutor's reference to defendant as "totally evil" in opening statement held not ineffective assistance because a prosecutor's flights of oratory and figurative speech in opening statements and closing arguments are not reversible error).