**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0329. SMITH v. THE STATE.

BARNES, Presiding Judge.

A jury found Velbert Denorris Smith guilty of forgery in the first degree, tampering with evidence, misdemeanor obstruction of a law enforcement officer, and possession of cocaine. Smith filed a motion for new trial, which the trial court denied. On appeal, Smith contends, among other things, that the trial court deprived him of his constitutional right to self-representation by not allowing him to represent himself at trial. We agree with Smith and therefore must reverse his convictions and remand the case to the trial court for a new trial.

Following a criminal conviction, we view the evidence in the light most favorable to the verdict. *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). So viewed, the evidence showed that on December 4, 2009, Smith walked into a branch of Bank of America in Douglas County. Smith approached one of the bank tellers and handed her a check made payable to him for $965. The check was

drawn on a restaurant's business account and was signed in the name of the individual who owned the restaurant. Smith told the teller that he did not have an account at the bank but wanted to cash the check.

When the teller entered information about the check into her computer, she received a prompt to verify the signature on the check. After comparing the restaurant owner's signature card that was on file at the bank to the signature on the check, the teller determined that the signatures did not match. The teller then notified her supervisor of the issue and called the restaurant owner to verify if he knew Smith. The restaurant owner denied that he knew Smith and asked the bank to call the police.

While another bank employee called the police, the teller informed Smith that the bank was attempting to verify the signature of the account holder. Smith became agitated and demanded that the teller return the check to him. He then snatched the check away from the teller and went to leave the bank.

To delay Smith from leaving the bank until the police arrived, an assistant branch manager who had been informed of the potential forgery approached Smith, asked if she could help him, and requested to see the check and his identification. Smith handed the check and his identification to the assistant manager and told her that he had performed some work for the restaurant's owner and that this was his

2

payroll check. The assistant manager noted from the check that the restaurant had a Suwanee address and from Smith's identification that he lived in Atlanta. When the assistant manager asked Smith why he had traveled to such a distant bank branch to cash a check from a Suwanee business when he lived in Atlanta, Smith asked for the check and his identification back from the assistant manager and then grabbed the check from her. The assistant manager handed Smith back his identification, and he left the bank.

A police officer who was working off-duty as a security guard for the bank was parked nearby in his marked patrol car. After receiving information about the forgery in progress at the bank, including a description of the suspect, the officer, who was in his police uniform, approached Smith outside the bank and inquired about the check. Smith responded that he had been trying to cash the check, and the officer saw that Smith was holding the check in his left hand. The officer advised Smith that he was under arrest for forgery and attempted to handcuff him, but Smith began struggling with the officer. The officer ultimately was able to subdue Smith and handcuff him, but the officer noticed that the check was missing. The officer searched through Smith's clothing in an effort to find the check, and, in the process of doing so, discovered a glass pipe with cocaine residue inside of it. The officer, however,

was unable to find the check in Smith's clothing, and he asked Smith to open his mouth. When Smith complied, the officer saw the check dangling from the roof of his mouth. Smith started to chew it. The officer applied pressure to Smith's cheek to keep him from swallowing the check, and Smith eventually spit it out.

Smith was indicted for forgery in the first degree, tampering with evidence, felony obstruction of a law enforcement officer, and possession of cocaine.[1] At the ensuing jury trial, the forged check and glass pipe with cocaine residue inside of it were introduced into evidence. The bank teller, assistant branch manager, and police officer testified to the events as set out above. The restaurant owner also testified that he did not know Smith, had not written a check to him, and had not authorized anyone in his business to write a check to him. The owner was shown the check at issue and confirmed that the signature on it was not his own. Additionally, a forensic chemist, who worked at the State crime lab and was qualified as an expert in drug identification, opined that the residue inside the glass pipe found in Smith's clothing was cocaine.

---

[1] Smith was indicted on a second count of forgery in the first degree, but the trial court later granted Smith's motion for a directed verdict of acquittal on that count.

After the close of the evidence and charge of the court, the jury found Smith guilty of forgery in the first degree, tampering with evidence, the lesser included offense of misdemeanor obstruction of a law enforcement officer, and possession of cocaine. Smith then filed a motion for new trial. Following a hearing, the trial court denied Smith's motion, resulting in this appeal.

1. The evidence introduced at trial and summarized above was sufficient to authorize a rational jury to find Smith guilty beyond a reasonable doubt of forgery in the first degree, tampering with evidence, misdemeanor obstruction of a law enforcement officer, and possession of cocaine. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Smith contends that the trial court deprived him of his constitutional right to self-representation by summarily ruling that he could not represent himself at trial without following the procedures as set forth in *Faretta v. California*, 422 U.S. 806 (95 SCt 2525, 45 LE2d 562) (1975), and its progeny. We agree.

The record reflects that in December 2009, an attorney with the Douglas County Public Defender's Office was appointed to represent Smith. In February 2010, Smith sent a letter to the clerk of the trial court indicating that he wished for his appointed counsel to be dismissed from the case so that he could represent himself.

5

A few months later, Smith filed a "Motion to Have Attorney Removed as Ineffective Counselor."

In April 2010, based on Smith's conduct and demeanor during pretrial proceedings, and with the agreement of Smith's appointed counsel, the trial court ordered a mental health evaluation to determine, among other things, whether Smith was competent to stand trial. Because Smith refused to cooperate with the evaluation, the forensic psychologist who attempted to interview him was unable to offer an opinion as to his competency.

The trial court subsequently entered an order confining Smith in an inpatient mental health facility so that his mental competency could be better evaluated. Smith participated in his inpatient evaluation with a forensic psychologist, who concluded that Smith was competent to stand trial. The psychologist noted in his report that Smith had expressed a desire to have his appointed counsel removed from the case; that Smith understood the role of defense counsel; that Smith could participate in his legal defense; that Smith understood "the nature and object of the proceedings and his situation in reference to the proceedings"; and that his request to represent himself was the result of "willful personal choice rather than mental incompetence."

After receiving the inpatient mental health evaluation and conducting a hearing, the trial court allowed Smith's appointed counsel to withdraw from the case so that Smith could represent himself. Thereafter, at a calendar call on April 28, 2011, Smith appeared pro se and announced that he was ready for trial. However, on May 2, 2011, the day before his trial was set to commence, Smith filed a "Motion For Requested Private Effective Attorney And/Or Counselor Of Law." The trial court granted the motion, continued the trial date, and appointed a new attorney to represent Smith. The new counsel filed his notice of appearance in the case on May 9, 2011.

The case was called for trial a second time on November 14, 2011. Before a jury was selected, Smith's counsel announced that he was ready to proceed, but Smith immediately asserted to the trial court, "I would like to bring notice to you, he's not going to represent me. I will represent myself." Smith then asked for a continuance so that he could "prepare [himself] for this jury trial and have this attorney removed from [the] case." Smith further stated in part, "He don't need to represent me during nothing. I can do that very well. . . . There's no way possible that this attorney can represent me during anything. I refuse to acknowledge him as the attorney, period." Smith then reiterated several times to the trial court that he wished to represent himself and did not want his appointed counsel to try the case on his behalf.

The trial court denied Smith's request to represent himself and ordered that the trial would proceed forward that day with Smith's appointed counsel continuing to represent him. The court denied Smith's request to proceed pro se in light of the fact that Smith had previously requested and been permitted to represent himself but then had changed his mind on the eve of trial. As the trial court later explained in its order denying Smith's motion for new trial, the court had been "fully prepared to allow [Smith] to represent himself" at trial after he made his first request for self-representation, but the court believed that Smith's request to represent himself a second time was a dilatory tactic, designed to delay the administration of justice, and had denied his second request on that basis.

The trial court's decision to deny Smith's request for permission to represent himself was in error.[2] Both the federal and state constitutions guarantee a criminal defendant the right to represent himself. See U.S. Const. Amend. VI; 1983 Ga. Const., Art. I, Sec. I, Par. XII; *Faretta*, 422 U.S. at 819 (III) (A); *Howard v. State*, 251 Ga. App. 243, 245 (6) (553 SE2d 862) (2001). We recently summarized the proper

---

[2] Smith does not enumerate as error the trial court's denial of his request for a continuance.

procedure that must be followed when a defendant asserts his constitutional right to

self-representation:

> If a defendant makes an unequivocal assertion of his right to represent himself prior to trial, the request should be followed by a *Faretta* hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation. Once given pro se status, the defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial. Deprivation of the right to self-representation is structural error, i.e., errors that require automatic reversal. There are limits to this right, however. Even for those who are competent to stand trial, a State may insist upon representation by counsel for those who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

(Citations, punctuation, and emphasis omitted.) *Thomas v. State*, 331 Ga. App. 641,

658 (7) (771 SE2d 255) (2015). See *Faretta*, 422 U.S. at 819-820 (III) (A), 835-836

(V); *Indiana v. Edwards*, 554 U.S. 164, 178 (III) (128 SCt 2379, 171 LE2d 345)

(2008); *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004); *Bettis v.

State*, 328 Ga. App. 167, 168-169 (1) (761 SE2d 570) (2014).

9

Here, although Smith made several unequivocal assertions of his right to represent himself before the trial commenced, the trial court did not conduct a *Faretta* hearing and apprise Smith of the dangers and disadvantages of self-representation. Instead, the court summarily denied Smith's request to represent himself after concluding that the request was a dilatory tactic. But the motives of a defendant are irrelevant in determining whether to honor a defendant's pretrial, unequivocal request to represent himself; rather, the proper test is whether the defendant "knowingly and intelligently waives his or her right to counsel." (Citation and punctuation omitted.) *Lamar*, 278 Ga. at 153 (1) (b). See *Bettis*, 328 Ga. App. at 171 (1). And while a defendant may be denied his right to self-representation if he suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself, see *Indiana*, 554 U.S. at 178 (III); *Thomas*, 331 Ga. App. at 658 (7), the inpatient mental health evaluation ordered by the trial court and performed on Smith reflected that he was mentally competent. Indeed, after reviewing the mental health evaluation and conducting a hearing on the issue, the trial court allowed Smith to represent himself in pretrial matters and had been "fully prepared to allow [Smith] to represent himself" at trial; it was only when the court later concluded that Smith's second request to represent himself was done with a dilatory motive that the court

10

reversed course and refused to allow Smith to represent himself solely on that basis. "Accordingly, because the record shows that [Smith] both wished to make and was mentally competent to make a knowing and intelligent waiver of his right to counsel, and the trial court employed the wrong standard for making this determination, the trial court erred." *Bettis*, 328 Ga. App. at 171 (1). Because the improper denial of the right to self-representation constitutes structural error, see *Thomas*, 331 Ga. App. at 658 (7), Smith's convictions must be reversed and the case remanded for a new trial.

In reaching this conclusion, we note that *Williams v. State*, 183 Ga. App. 373 (358 SE2d 914) (1987), relied upon by the trial court, is distinguishable from the present case. It is true that in *Williams*, this Court stated that a trial court may deny a defendant's request to represent himself if the court finds that the request is a "dilatory tactic[] calculated to disrupt the proceedings against him." Id. at 374 (1). Significantly, however, the defendant in *Williams* made his first unequivocal request to represent himself *after* trial had commenced, see id. at 373 (1), and the denial of a request for self-representation "made after the beginning of trial is not reversible error because a defendant cannot frivolously change his mind in midstream by asserting his right to self-representation in the middle of his trial." (Citations and punctuation omitted.) *Mason v. State*, 325 Ga. App. 609, 614 (2) (a) (754 SE2d 397)

11

(2014). Hence, read in context, the reference in *Williams* to dilatory tactics has no bearing in cases with a procedural posture like the present one, where the defendant unequivocally requests to represent himself before the trial begins.[3]

3. Smith also contends that the trial court erred in failing to grant him a discharge and acquittal on statutory speedy trial grounds. We disagree under the facts of this case.

Under OCGA § 17-7-170, "[a] defendant who has made a proper demand for a speedy trial is entitled to an automatic discharge without further motion if he is not tried within the second term of court, provided that a jury is present at each term and is qualified to try him." (Citation omitted.) *Gifford v. State*, 301 Ga. App. 50, 51 (686 SE2d 831) (2009). "But the underlying requirement remains that a valid demand for trial must exist. Absent such a demand, no right exists to be tried within a certain time frame." *Doehling v. State*, 238 Ga. App. 293, 294 (518 SE2d 137) (1999).

---

[3] In *Coppolla v. State*, 238 Ga. App. 567, 573 (2) (519 SE2d 494) (1999), we quoted the "dilatory tactics" language from *Williams*, but in the context where a defendant objected to his appointed counsel but then refused to respond when the trial court asked him whether he wished to represent himself without the assistance of any counsel. *Coppolla* thus addresses the narrow context where a defendant complains about his appointed counsel but then thwarts the trial court's efforts to determine whether the defendant desires to represent himself. That is clearly not the situation in the present case, where Smith repeatedly and unequivocally asserted that he wanted to represent himself at trial.

Smith failed to file a valid demand for speedy trial pursuant to OCGA § 17-7-170. Rather, Smith filed a pro se demand for a statutory speedy trial while he was represented by his first counsel.

> As a consequence of [Smith's] representation by counsel, his pro se motion [was] void. In Georgia, a criminal defendant no longer has the right to represent himself and also be represented by an attorney. As [Smith] was represented by counsel when he filed the pro se motion, this motion was of no legal effect whatsoever.

(Citation and punctuation omitted.) *Voils v. State*, 266 Ga. App. 738, 742 (3) (598 SE2d 33) (2004). Because Smith did not file a valid demand for speedy trial, the trial court did not err in failing to grant Smith a discharge and acquittal pursuant to OCGA § 17-7-170. See *Maddox v. State*, 218 Ga. App. 320, 321 (1) (461 SE2d 286) (1995); *Goodwin v. State*, 202 Ga. App. 655, 656 (415 SE2d 472) (1992).

4. Smith's remaining enumerations of error are moot and need not be addressed in light of our decision in Division 2 that his convictions must be reversed and the case remanded for a new trial.

*Judgment reversed and case remanded for a new trial. McMillian, J., concurs. Ray, J., concurs fully and specially.*

# In the Court of Appeals of Georgia

A15A0329. SMITH v. THE STATE.

RAY, Judge, concurring specially.

Although I concur fully in the majority's opinion in this case, I write to stress that I believe that the trial court acted in good faith and was understandably frustrated with the defendant.

Originally, legal counsel was provided to the defendant by the Douglas County Public Defender's Office. By letter sent in February 2010, he asked to represent himself. With the aid of a mental health evaluation which concluded that the defendant was competent to make such a decision and generally understood the ramifications of the decision, the trial court allowed the defendant to go it alone. Yet, just before the case was called for trial, the defendant changed his mind, contacted the trial court and asked that he receive both another attorney and a continuance to allow that attorney to get up to speed. The trial court so obliged the defendant. When the case was called for trial thereafter, however, the defendant for the second time sought the discharge of his court appointed attorney and another continuance. I find no fault in the trial court being skeptical of this request, believing it to be just a delay tactic by the defendant.

Understanding that "hindsight is 20/20," in retrospect the trial court might have engaged in a little more dialogue with the defendant when he requested to represent himself again. If the procedures set forth in *Faretta v. California* had been followed and the trial court had concluded therefrom that the defendant was authorized to make a decision to represent himself, the court could have simply stated that the trial would be that very day. A pool of citizens, after all, was waiting for jury selection to begin. I see no reason why the trial court would have automatically been required to grant another continuance. Based upon my own experiences in similar situations and the record in this case, I think the trial court was correct in concluding that the defendant was merely trying to gain a continuance so as to put off his trial as long as possible. Had his request to represent himself been granted, but with the case proceeding to trial immediately, the defendant's real intentions may have become completely transparent, as he might well have chosen to utilize the services of the attorney that the court had provided.