## A02A1477. GUILLEN v. THE STATE.
(574 SE2d 598)

SMITH, Presiding Judge.

Inez Guillen was convicted by a jury on one count of kidnapping with bodily injury, one count of aggravated battery, and two counts of aggravated assault. Her motion for new trial as amended was denied, and she appeals. We find no merit in any of Guillen's contentions with respect to her convictions. But because we conclude that the conviction for aggravated battery should have merged into the conviction for kidnapping with bodily injury, we vacate the sentences with respect to those counts and remand this case to the trial court for resentencing consistent with this opinion.

Construed in favor of the jury's verdict, evidence was presented that as the victim was exiting her car during the early morning at her workplace, Guillen approached and demanded to talk with her. Guillen and the victim were coworkers. The victim refused, and Guillen, who was wearing gloves and a knit hat, pulled what appeared to be a gun from her pocket and forced the victim back into her car. Guillen got into the backseat and instructed the victim to drive to a nearby restaurant. Guillen told her, "I don't want to have to kill you, but I will." En route to the restaurant, Guillen talked about the victim's relationship with a man Guillen considered to be her boyfriend. When the victim arrived in the parking lot of the restaurant, Guillen provided some coins to the victim and instructed her to make a telephone call from a pay telephone. Because the telephone malfunc-

tioned, Guillen made her drive to another nearby telephone, which also did not work. They proceeded to a nearby drug store, where Guillen forced the victim to call the victim's supervisor and state that she was ill and was leaving work. At Guillen's demand, the victim also called her boyfriend and left a message telling him she did not want to see him again. Guillen also told the victim to call another employee and say she "was sorry and goodbye," but the victim refused.

Guillen told the victim to drive to another parking lot, where at Guillen's direction the victim again left a message for her boyfriend similar to the one she left moments earlier. Minutes later, Guillen forced the victim to drink from a Mountain Dew bottle containing liquid and pills, which she claimed would make the victim "forget what we had talked about." Guillen then instructed the victim to return to a rarely used parking lot at their workplace, where Guillen said to the victim, "I hate to have to do this to you." The victim thought Guillen was going to shoot her in the head, but when "the gunshot didn't come," the victim began to exit the car. A struggle ensued, and the victim saw a knife in Guillen's hand. The victim was stabbed three times in the back and suffered a collapsed lung. She escaped, however, ran into her workplace, and told other employees that "Inez" was trying to kill her.

1. Guillen presented an insanity defense at trial, and she argues that the jury was not authorized to conclude she was legally sane at the time she committed the crimes in this case. We do not agree.

> Insanity is an affirmative defense and the burden of proof on one asserting such a defense is proof by a preponderance of the evidence. The appropriate standard of appellate review of the sufficiency of the evidence with regard to a jury's finding of sanity in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime.

(Citations and punctuation omitted.) *Wilson v. State*, 257 Ga. 444, 449 (11) (c) (359 SE2d 891) (1987). Unless proof of insanity is overwhelming, a jury is entitled to rely on the presumption of sanity found in OCGA § 16-2-3. *Rodriguez v. State*, 271 Ga. 40, 42-43 (1) (518 SE2d 131) (1999).

Evidence of legal insanity in this case was far from overwhelming. Guillen relies in large part on her expert's testimony concerning increased dosages of Xanax and Prozac taken by her shortly before

commission of the crimes.[1] He testified that people who suffer from "borderline personality disorder" should not take Xanax because "they tend to be a little disorganized and sometimes psychotic," and Xanax could make "them even more psychotic and more irrational than it would if you didn't give them anything." According to this witness, Xanax could cause a person to undergo a "hostility attack" but several hours later "have actually no memory of it" due to anterograde amnesia.[2] But he also stated that this behavior could occur "because of Xanax or not because of Xanax."

An expert appointed by the court also testified. And although she testified that a person suffering from anterograde amnesia or from a "dissociative spell" might not remember their activities, she also stated that a person experiencing such a condition can nevertheless distinguish right from wrong. This witness testified that Guillen was "able to do a lot of pretty rational things at the time of the offense," that she was "responsible" for her acts, and that no evidence showed that Guillen was in a "psychotic fog" at the time of the crimes.

Aside from the experts' testimony, which was not binding on the jury, see *Wilson*, supra at 449, other evidence introduced by the prosecution bore on Guillen's state of mind at the time of the crimes. As argued by the State, the jury was entitled to consider "the methodical series of steps [Guillen] took to implement her plan." She wore a hat and gloves to the scene; she had change ready for the victim's use at pay telephones; she was aware of the time the victim arrived at work; and she even devised a plan to make the victim forget about the events that transpired. A rational trier of fact was authorized to rely on the presumption of Guillen's sanity and to conclude that Guillen failed to prove by a preponderance of evidence that she was insane at the time of the crimes.

2. Guillen made two statements to Detective Eric Edkin, one before her arrest and one afterward, and she complains that neither should have been admitted into evidence.

(a) After determining that Guillen was a suspect, Edkin and a uniformed police officer went to Guillen's home within a few hours of the incident. They knocked on the door, and when Guillen answered, Edkin introduced himself and the officer. He told Guillen he wanted

---

[1] We agree with the State that this witness "admitted a dubious background." Self-described as "the world's expert in what I do in urine screening," although he testified concerning the effects of increased dosages of certain medications taken by Guillen, he did not consult with the physician who prescribed those medications. We also note that he was placed on probation and fined by the State Board of Medical Examiners for misadministration of methadone.

[2] The court-appointed expert defined "anterograde amnesia" as being a type of amnesia that occurs after one takes medication, causing one to "forget the things that are going to happen in the next few hours while the medicine is working."

to talk with her about an incident that occurred at her workplace. Without hesitation, Guillen invited them inside. Guillen told him that she had not been at work that day and did not know what he was talking about. She stated she left home only to go to a nearby convenience store for cigarettes around 8:00 a.m. but returned home before 8:30 a.m. Edkin and the officer were inside Guillen's home less than half an hour. Edkin stated that Guillen told him she was taking Prozac, Xanax, and Synthroid but also that she appeared to be coherent and alert, and she gave appropriate responses to his questions. He observed no behavior that "would indicate she wasn't coherently following and responding to [his] reason for visiting in her house" and that "it was a very relaxed atmosphere at the time."

Edkin did not read Guillen her *Miranda* rights before this conversation. Guillen argues that she was in custody for *Miranda* purposes at the time of the interview and therefore that the statement should have been suppressed. We do not agree. "*Miranda* warnings must be given before questioning a suspect who is in custody. Under *Miranda*, a suspect is considered to be in custody when a reasonable person in the suspect's position would conclude that his freedom of action has been restrained to the degree associated with a formal arrest. [Cits.]" *Threatt v. State*, 240 Ga. App. 592, 598 (2) (524 SE2d 276) (1999). Even though Edkin considered Guillen to be a suspect at the time he initially questioned her, this " 'is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.' [Cit.]" *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). And contrary to Guillen's argument, although Edkin was accompanied by another officer when he interviewed Guillen, we find nothing in the record that would have caused a reasonable person to have believed his or her freedom to be "more than temporarily restrained by the questioning. [Cit.]" *Threatt*, supra at 598. In fact, the record shows that the encounter was relaxed, and Guillen readily invited the police into her home. Under these circumstances, we cannot conclude that Guillen's first statement to Edkin was custodial and required *Miranda* warnings. The trial court therefore did not err in denying Guillen's motion to suppress this statement.

(b) After Edkin interviewed Guillen at her home, he conducted further investigation and arrested her a few hours later. Before questioning her at police headquarters, Edkin read Guillen her *Miranda* rights, and she signed a waiver of rights form, both of which were captured on video, along with Edkin's interview with Guillen. During the interview, Guillen denied being at her workplace that day and denied any wrongdoing.

Guillen argues that the evidence clearly shows she was under the influence of medication at the time of the custodial interrogation

and therefore that she "was not in a state of mind that rendered her capable of making a voluntary decision regarding either the statement or the waiver of her rights." As a part of the circumstances surrounding Guillen's statement, this fact "could be considered by the jury," but her use of medication "provided no independent basis for suppression." *Carr v. State*, 267 Ga. 547, 552 (4) (480 SE2d 583) (1997). Whether a waiver of rights and statement were voluntary "depends on the totality of the circumstances." (Citations and punctuation omitted.) *Larry v. State*, 266 Ga. 284, 286 (2) (466 SE2d 850) (1996). The State must show voluntariness by a preponderance of the evidence, and we accept factual determinations by the trial court concerning this issue unless clearly erroneous. *Stewart v. State*, 165 Ga. App. 428 (1) (300 SE2d 331) (1983).

Under the facts of this case, the State met its burden. Edkin testified that he did not hold out any hope of benefit to Guillen in exchange for her statement, nor did he "suggest to her any fear of detriment" if she refused to give a statement. He also stated that Guillen's responses were "appropriately linked" to his questions, and although she twice "made it a point" to tell him she had taken medication, he noticed no "significant change in her demeanor or responsiveness as compared to" the previous interview. She never asked that the interview be terminated in order to take any medication, and when asked to describe Guillen's "attitude" toward speaking with him, Edkin testified that she appeared cooperative. The evidence supports the trial court's finding that Guillen's custodial statement was voluntary.

3. Guillen argues that the State failed to establish an adequate chain of custody with respect to State's Exhibit 9, the Mountain Dew bottle from which the victim was forced to drink, and that the trial court therefore erred in admitting this evidence.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the State has the burden of proving with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not foreclose every possibility of tampering, however, and need only show reasonable assurance of the identity of the evidence.

(Citation and punctuation omitted.) *Winter v. State*, 252 Ga. App. 790, 791 (2) (557 SE2d 436) (2001). If "no showing of tampering has been made and only a bare speculation of . . . tampering exists, the chain of custody is not broken and the evidence is admissible, with any doubts going to its weight. [Cits.]" Id.

Guillen argues that the bottle "was not and could not be

accounted for at any time" and that the evidence raised "at minimum a suspicion of tampering by [the victim's mother] or others on her behalf." Guillen misrepresents the evidence, as the State took care to present ample evidence concerning the discovery of the bottle and its whereabouts following the discovery. We have reviewed the evidence presented at trial, and the State showed a "reasonable assurance" that the bottle seized from the victim's car and the substance inside it were not altered. Guillen has raised only a speculation of tampering. The bottle and its contents were therefore admissible, and it was for the jury to determine the weight to give this evidence.

4. Guillen argues that a new trial is required because the trial court improperly emphasized the court-appointed expert's testimony by referring to her as the "court's witness." We find no error. As required by OCGA § 17-7-130.1,[3] when Guillen tendered her notice that she intended to raise an insanity defense, the trial court entered an order that she be evaluated by the Forensic Division of Georgia Regional Hospital. In accordance with this order, Guillen was evaluated by Dr. Alisa Smith, a forensic psychiatrist at Georgia Regional Hospital, who testified at trial that Guillen was "responsible" for the acts for which she was charged. Guillen points out that the trial court "introduced Dr. Smith as 'the Court's witness' and allowed the State to 'tender' Dr. Smith to the jury as an expert." She argues that this placed "undue and improper emphasis on this witness and her testimony."

The Supreme Court of Georgia has discussed the possibility of a jury's giving "greater weight to the 'court's witness.' " *Turner v. State*, 268 Ga. 213, 215 (2) (a) (486 SE2d 839) (1997). See also *Henry v. State*, 265 Ga. 732, 741-742 (462 SE2d 737) (1995) (Fletcher, P. J., concurring). But we cannot conclude that this concern was realized here. Although the court did state that Dr. Smith was the "court's witness," the court explained this phrase to the jury. Before Dr. Smith testified, the court instructed the jury that because an insanity plea was entered, it was required to appoint an independent psychiatrist to examine Guillen and "to make a report back, and for that reason they are the Court's witness. Both attorneys will have the opportunity to examine the witness after I swear Dr. Smith in." Thereafter, the trial court did not question the witness or comment on her veracity. Instead, both the prosecution and defense conducted a full examination of this witness. This practice decreased the likelihood that the jury might give "greater weight" to the testimony of this witness. Even though the State tendered Dr. Smith as an expert,

---

[3] OCGA § 17-7-130.1 requires the trial court to "appoint at least one psychiatrist or licensed psychologist to examine the defendant and to testify at the trial" whenever a notice of insanity defense is filed.

and her testimony was admitted by the court as such, we cannot agree with Guillen that Dr. Smith was "classified as an agent of the State" in contravention of *Tolbert v. State*, 260 Ga. 527, 528 (2) (b) (397 SE2d 439) (1990). Given the instructions of the trial court and the full examination by the prosecution and the defense, we conclude that Dr. Smith was "an independent and impartial witness." Id. Reversal is not required on this ground.

5. Guillen contends she received ineffective assistance of counsel because her attorney failed to object to the trial court's introduction of Dr. Smith as the "court's witness" and because counsel failed to object when the State tendered "the witness as a qualified expert and thereafter conduct[ed] a direct examination of the witness as if she were the State's agent." But as discussed in the preceding Division, we find no error in the procedure employed by the trial court with respect to introduction of this witness. It follows that trial counsel was not ineffective for failing to object.

6. Guillen argues that her conviction for aggravated battery should have merged with her conviction for kidnapping with bodily injury. We agree. Guillen was charged with kidnapping with bodily injury in that she abducted the victim without authority, held her against her will, and subjected her to bodily injury by stabbing her multiple times in her back with a knife. A separate count of the indictment charged Guillen with aggravated battery in that she maliciously caused bodily harm to the victim "by seriously disfiguring a member of her body, . . . her back, by stabbing her repeatedly with a knife." The evidence required to convict Guillen of aggravated battery by stabbing was the only evidence showing the bodily injury described in the kidnapping charge. Therefore, the offense of aggravated battery was included in the offense of kidnapping with bodily injury. "If, in establishing the commission of a crime, the State relies entirely upon the same evidence used to establish a separate crime charged in the same indictment, as a matter of law the former charge is included in the latter charge." (Footnote omitted.) *Fetty v. State*, 268 Ga. 365, 366 (2) (489 SE2d 813) (1997).

The State argues that the crime of kidnapping was complete when the victim was abducted and held against her will and that her stabbing, and therefore the aggravated battery, occurred at the end of the episode. Indeed, the offense of kidnapping is not a continuing crime and is completed when a victim is moved from one place to another. See *Sharp v. State*, 255 Ga. App. 485, 487 (1) (565 SE2d 841) (2002). But Guillen was not charged with simple kidnapping. She was charged with kidnapping with bodily injury, which the courts of this state have treated as a separate and distinct offense. *Hunter v. State*, 228 Ga. App. 846 (493 SE2d 44) (1997); *Hester v. State*, 216 Ga. App. 400, 401 (454 SE2d 604) (1995). The trial court sentenced Guil-

len to life imprisonment for kidnapping with bodily injury and separately sentenced her on the aggravated battery charge to 20 years to serve, consecutive to the sentence on the kidnapping with bodily injury conviction. Under the circumstances of this case, the sentence of the court effectively twice punished Guillen for the same conduct. The aggravated battery conviction (Count 4) should have merged with the conviction for kidnapping with bodily injury (Count 1). We therefore vacate the sentences on Counts 1 and 4 and remand this case to the trial court for resentencing. See generally *Kemper v. State*, 251 Ga. App. 665, 666-667 (2) (b) (555 SE2d 40) (2001).

*Judgment of convictions affirmed. Sentence vacated in part and case remanded for resentencing. Eldridge and Ellington, JJ., concur.*

DECIDED NOVEMBER 19, 2002.

*Novy, James & Vaughan, Eugene Novy, Deborah M. Vaughan,* for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney,* for appellee.