**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1039. WOODARD v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Mervin T. Woodard on four counts of aggravated battery, one count of aggravated assault, one count of kidnapping with bodily injury, two counts of false imprisonment, one count of family violence battery, one count of making terroristic threats, one count of kidnapping, and two counts of reckless conduct. On appeal, Woodard challenges the sufficiency of the evidence supporting his conviction for kidnapping with bodily injury and further contends that the trial court erred in failing to allow him to represent himself. For the reasons set forth *infra*, we affirm Woodard's convictions in part, but because certain counts should have merged for purposes of sentencing, we vacate his sentence and remand for resentencing.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that Woodard and M. C., the victim, began dating in 2012 and moved in together later that same year. In 2015, M. C. gave birth to the couple's daughter, but by this time, Woodard had been violent with M. C. on several occasions and they ended up separating. Nevertheless, on December 13, 2015, M. C. arrived home to find Woodard outside on her front steps. And as M. C. entered the home, Woodard asked her to drive him to Rome, Georgia, where he had relatives. But once inside, Woodard took M. C.'s cell phone and car keys before punching her in the face and yelling at her. Woodard then retrieved a knife from the kitchen and put it to M. C.'s throat while continuing to yell at her.

A few minutes later, Woodard forced M. C. outside and into her vehicle, which he then drove to a nearby gas station. There, Woodard ordered M. C. to withdraw cash from an ATM. After she complied, Woodard drove a short distance to a house that M. C. did not recognize, and forced her out of the vehicle and onto the front porch. Woodard then spoke to a man, who was also unfamiliar to M. C., and gave him some money to watch M. C. while he went inside. Woodard emerged about ten minutes later, forced M. C. into the driver's seat of her vehicle, and ordered her to

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

drive to a different gas station. Once there, Woodard entered the station's convenience store, exited a few minutes later, and directed M. C. to drive him away. But shortly thereafter, apparently realizing that he had forgotten something, Woodard ordered M. C. to return to the gas station, at which point he went back into the store. As he did, M. C. found her spare key for the vehicle, drove to a nearby shopping center, and called the police. Within a few minutes, a police officer arrived, and M. C. provided him with a detailed statement regarding Woodard's actions. The same officer later went to M. C.'s home, and although broken windows indicated that someone attempted to enter the residence, Woodard was not there.

Following this incident, the police officer who took M. C.'s statement obtained an arrest warrant for Woodard. But Woodard eluded law enforcement, and in January 2016, M. C. resumed speaking to Woodard and even allowed him to have contact with their daughter. This continued for several months, with Woodard promising M. C. that he would turn himself in to authorities by May 31, 2016; but that date passed without him doing so. One day later, on June 1, 2016, M. C. arrived home sometime after 2:00 a.m., and upon approaching her front door, she immediately smelled gasoline. Alarmed, M. C. walked back toward her vehicle, but before she reached it, Woodard emerged from the house, grabbed M. C. by the hand, and dragged her

3

inside. Once inside the home, Woodard lead M. C. through the foyer to the entrance of the kitchen. Woodard then picked up a gasoline can, doused M. C. with gasoline, and set her on fire. Immediately, M. C.'s clothes burst into flames. And believing that she was going to die, M. C. tried to run toward the back door, but Woodard blocked her exit. A moment later, Woodard used the kitchen faucet hose to extinguish the flames engulfing M. C. He then put M. C. into her vehicle and drove her to the hospital, before fleeing after placing M. C. out on the street in front of the emergency department.

Thereafter, the State charged Woodard, via indictment, with four counts of aggravated battery, one count of aggravated assault, one count of arson in the third degree, one count of kidnapping with bodily injury, two counts of false imprisonment, two counts of armed robbery, one count of burglary in the first degree, and one count of theft by taking, all of which related to the June 1, 2016 incident. And in the same indictment, the State also charged Woodard with one count of family violence battery, one count of false imprisonment, one count of making terroristic threats, one count of kidnapping, and two counts of aggravated assault, all of which related to the December 13, 2015 incident.

The case eventually proceeded to trial, during which the State introduced the aforementioned evidence, as well as photographic evidence of M. C.'s injuries and the crime scene. In addition, M. C.'s friend testified that, on the night of the June 1, 2016 incident, Woodard called her from M. C.'s cell phone, told her that he burned M. C. and she was at the hospital, before abruptly hanging up. At the trial's conclusion, the jury found Woodard guilty on the four counts of aggravated battery, one count of aggravated assault, one count of kidnapping with bodily injury, two counts of false imprisonment, one count of family violence battery, one count of making terroristic threats, one count of kidnapping, and two counts of reckless conduct (as lesser included offenses of aggravated assault). Subsequently, Woodard obtained new counsel and filed a motion for new trial, which the trial court denied after conducting a hearing on the matter. This appeal follows.

1. Woodard contends that the evidence was insufficient to support his conviction on the charge of kidnapping with bodily injury.[2] We disagree.

---

[2] Initially, Woodard also argued that the evidence was insufficient to support his conviction on the charge of making a terroristic threat. But in a supplemental brief, Woodard acknowledged that the State introduced evidence supporting the charge and withdrew this enumeration of error.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Thus, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] With these guiding principles in mind, we turn to Woodard's claim that there was not sufficient evidence to support his conviction for kidnapping with bodily injury.

OCGA § 16-5-40 (a) provides: "A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or

---

[3] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[4] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

warrant and holds such other person against his or her will." And under OCGA § 16-5-40 (d) (4), "[a] person convicted of the offense of kidnapping shall be punished by[ ] . . . [l]ife imprisonment or death if the person kidnapped received bodily injury." Thus, kidnapping with bodily injury requires that "an injury, no matter how slight, occur during the kidnapping."[6] But whether the bodily injury occurs at "the beginning of the kidnapping incident or after the victim has been abducted is immaterial for purposes of proving the elements of the crime."[7]

Here, Count 7 of the indictment charged Woodard with the offense of kidnapping, alleging that on June 1, 2016, he abducted M. C. "without lawful authority or warrant and held such person against her will, said act resulting in bodily injury to [M. C.]" And as discussed *supra*, the evidence showed that Woodard grabbed M. C.'s hand, forced her from outside near her vehicle to inside her home to the threshold between the foyer and the kitchen, poured gasoline on her, and ignited a lighter, which caused her serious injuries. Nevertheless, Woodard maintains the State failed to prove a bodily injury occurred *during* the kidnapping, arguing that the

---

[6] *White v. State*, 332 Ga. App. 495, 498 (2) (c) (773 SE2d 448) (2015) (punctuation omitted).

[7] *James v. State*, 239 Ga. App. 541, 541 (521 SE2d 465) (1999); *accord Greene v. State*, 295 Ga. App. 803, 808 (5) (673 SE2d 292) (2009).

7

kidnapping was complete when he poured gasoline on M. C. and lit her on fire. But as a matter of law, bodily injury does not have to "be inflicted at the same moment as the initial abduction."[8] Indeed, whether the bodily injury "occurs at the beginning of the kidnapping incident or after the victim has been abducted is immaterial for purposes of proving the elements of the crime."[9] Consequently, the evidence that Woodard set M. C. on fire immediately after forcing her from outside her home to inside between the foyer and the kitchen is sufficient to support his conviction on kidnapping with bodily injury.[10]

---

[8] *Sears v. State*, 270 Ga. 834, 841 (4) (514 SE2d 426) (1999).

[9] *James*, 239 Ga. App. at 541; *accord Greene*, 295 Ga. App. at 808 (5).

[10] *See Hewitt v. State*, 277 Ga. 327, 330 (1) (c) (588 SE2d 722) (2003) (holding that evidence defendant assisted in initial beating of victim and shoving him into the backseat of a car was sufficient to support conviction of kidnapping with bodily injury), *overruled on other grounds by Manley v. State*, 287 Ga. 338 (698 SE2d 301) (2010); *James*, 239 Ga. App. at 541 (1) (holding that burning victim's face with a stun gun before dragging him into a washroom was sufficient to support defendant's conviction for kidnapping with bodily injury); *Culver v. State*, 230 Ga. App. 224, 232 (10) (496 SE2d 292) (1998) (finding that the evidence was sufficient to support a conviction for kidnapping with bodily injury when the defendant first hurt the victim by twisting her arm and then forced her to move from one room to another in her home); *Ferguson v. State*, 211 Ga. App. 218, 221 (3) (438 SE2d 682) (1993) (holding that defendant's choking of the victim before forcing her to move from her living room to her bedroom constituted the bodily injury necessary to establish the crime of kidnapping with bodily injury); *see also Greene*, 295 Ga. App. at 808-09 (5) (holding that trial counsel did not render ineffective assistance by failing to seek directed

Having determined that Woodard's conviction for kidnapping with bodily injury was supported by the evidence, we further conclude that his convictions on the four aggravated-battery charges should have merged with that conviction. Of course, when neither party "properly raises and argues a merger issue, this Court has no duty to scour the record searching for merger issues."[11] But if we notice a merger issue in a direct appeal, we regularly resolve that issue, "even [when] it was not raised in the trial court and is not enumerated as error on appeal."[12]

As we previously noted, Count 7 of the indictment alleged Woodard abducted M. C. "without lawful authority or warrant and held such person against her will, said act resulting in bodily injury to [M. C.]" And Count 1 of the indictment charged

---

verdict on kidnapping with bodily injury charge because strangulation of victim prior to moving her constituted an injury during the kidnapping).

[11] *Nazario v. State*, 293 Ga. 480, 488 (2) (d) (746 SE2d 109) (2013) (punctuation omitted); *accord Dixon v. State*, 302 Ga. 691, 696 (4) (808 SE2d 696) (2017); *Hulett v. State*, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014).

[12] *Hulett*, 296 Ga. at 54 (2) (punctuation omitted); *see Dixon*, 302 Ga. at 696 (4) (noting that "sometimes a merger error is so clear and obvious that it comes to our attention even without the help of any party, and in those instances, we have the discretion to correct the error upon our own initiative"); *Nazario*, 293 Ga. at 486 (2) (b) (explaining that a judgment of sentence is void where it imposes an illegal sentence, *i.e.*, a sentence that the law does not allow, and that the illegality of such a judgment is not a waivable issue).

9

Woodard with aggravated battery, alleging he "did maliciously cause bodily harm to [M. C.] by seriously disfiguring her face, a member of said person's body by burning her." Counts 2 through 4 were nearly identically worded with the only difference being the part of M. C.'s body disfigured by the battery. But our Supreme Court has held that "[i]f, in establishing the commission of a crime, the State relies entirely upon the same evidence used to establish a separate crime charged in the same indictment, as a matter of law the former charge is included in the latter charge."[13] Here, given that the injuries in all of the aggravated-battery charges were inflicted by the single act of burning M. C., the evidence required to convict Woodard on those charges was the only evidence regarding the manner in which he inflicted the bodily injury described in the kidnapping charge. Accordingly, the aggravated-battery convictions in Counts 1 through 4 should have merged with the conviction for kidnapping with bodily injury delineated in Count 7. As a result, we vacate the sentences on those counts and remand this case to the trial court for resentencing.[14]

---

[13] *Fetty v. State*, 268 Ga. 365, 366 (2) (489 SE2d 813) (1997) (footnote omitted); *accord Guillen v. State*, 258 Ga. App. 465, 471 (6) (574 SE2d 598) (2002).

[14] *See Guillen*, 258 Ga. App. at 471 (6) (holding that defendant's aggravated-battery conviction should have merged with his conviction for kidnapping with bodily injury and, thus, vacating sentences, given that evidence required to convict defendant of aggravated battery by stabbing victim was the only evidence showing

10

2. Woodard also contends that the trial court erred in failing to allow him to represent himself as required by *Faretta v. California*.[15] Again, we disagree.

Both the federal and Georgia constitutions guarantee a criminal defendant the right to self-representation.[16] And to avail himself of this right, Woodard was required

the bodily injury described in charged offense of kidnapping with bodily injury); *see also Jones v. State*, 285 Ga. App. 114, 116-17 (4) (645 SE2d 602) (2007) (holding that defendant's battery conviction should have merged with his conviction for kidnapping with bodily injury because the evidence required to convict defendant of battery was also the only evidence showing the bodily injury described in the kidnapping charge).

[15] 422 U.S. 806 (95 SCt 2525, 45 LE2d 562) (1975).

[16] *See id.* at 819 (III) (A) (holding that, although not explicitly stated in the Sixth Amendment, the right to self-representation is necessarily implied by the structure of the amendment); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnessed against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence"); Ga. Const., Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."); *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016) (It is well settled that both the federal and state constitutions "guarantee a criminal defendant both the right to counsel and the right to self-representation"); *Taylor v. Ricketts*, 239 Ga. 501, 502 (238 SE2d 52) (1977) ("A state may not force a lawyer upon an appellant when he insists that he wants to conduct his own defense").

to "clearly and unequivocally assert his desire to represent himself."[17] So, if a defendant makes an *unequivocal* assertion of his right to represent himself prior to trial, "the request should be followed by a *Faretta* hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[18] Suffice it to say, if the trial court improperly denies a defendant of his right to self-representation, this denial is "a structural error [that is] not subject to a harmlessness analysis, and requires automatic reversal."[19] But if the assertion of the right to proceed without the benefit of counsel is equivocal, there is "no reversible error in requiring the defendant to proceed with counsel."[20]

---

[17] *Oliver v. State*, 305 Ga. 678, 680 (2) (827 SE2d 639) (2019); *accord Faretta*, 422 U. S. at 835-36; *Wiggins*, 298 Ga. at 368 (2).

[18] *Smith v. State*, 332 Ga. App. 849, 853 (2) (775 SE2d 211) (2015) (punctuation omitted); *accord Owens v. State*, 298 Ga. 813, 814 (2) (783 SE2d 611) (2016); *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990); *Hillsman v. State*, 341 Ga. App. 543, 549-50 (4) (802 SE2d 7) (2017).

[19] *Oliver*, 305 Ga. at 680 (2); *accord McKaskle v. Wiggins*, 465 U. S. 168, 177 n. 8 (104 SCt 944, 79 LE2d 122) (1984); *Wiggins*, 298 Ga. at 370 (2).

[20] *Wiggins*, 298 Ga. at 368 (2); *accord McClarity v. State*, 234 Ga. App. 348 (1) (506 SE2d 392) (1998).

In this matter, several months prior to the start of trial, Woodard filed a *pro se* motion, despite being represented by counsel at the time, requesting that he be allowed to represent himself *and* simultaneously be "assisted" by counsel. Consequently, at a preliminary hearing held three months before his trial, the trial court asked Woodard the following questions:

> The Court: And so, this morning we're going to go through the series of questions that I'm required to address to you before I can make a determination on self-representation. Okay?
>
> The Defendant: Yes, ma'am.
>
> The Court: That is what you're still asking that I do; is that right?
>
> The Defendant: Yes, your Honor.

The trial court then explained to Woodard that he was entitled to representation by the public defender's office or his own counsel if he could afford to hire one, or he had the right to represent himself if the court determined that he understood what such representation entailed. Thereafter, the court explained to Woodard the maximum sentences for the various charges he was facing, the State's prosecutor provided the factual basis for the charges, and the court determined Woodard could

13

adequately read and write. Subsequently, the trial court and Woodard engaged in the following colloquy:

The Court: Why is it, Mr. Woodard, that you think you can do a better job than a lawyer in representing you in this case?

The Defendant: First of all, Your Honor, I feel like this case is an accidental case. Second of all [defense counsel] hasn't even discussed anything about my case with me, period.

After directing Woodard to listen carefully to its questions and respond accordingly, the trial court continued:

The Court: All right. So why is it that you think that you [would] do a better job than a lawyer in representing you in this case?

The Defendant: Because I know the facts of the case, Your Honor, and I know this case. I know this case, and I feel like that I'm the best candidate for representing myself. I just feel like I'm not going to be represented to the full extent of the law with other representation.

The Court: All right. And so, Mr. Woodard, do you, in fact, feel as if no lawyer can represent you in this case or do you have more of an issue with [defense counsel]?

The Defendant: Both, Your Honor. I've actually –

14

The Court: So it's your position that, even if this Court were to remove [defense counsel] from your case and appoint other counsel, that that lawyer would also not [be] in a better position than you are to represent you?

The Defendant: I can't say that, Your Honor. I can't say that, because I haven't had another lawyer, so I really don't know. But I have motions here that I filed.

The Court: Tell me this, Mr. Woodard. Was it something that you believe [defense counsel] did or did not do that prompted you to indicate that you wish to represent yourself?

The Defendant: Yes, Your Honor. That is the case.

The Court: All right. And so, independent of his actions, you would not be before me asking to represent yourself?

The Defendant: I would. I would, Your Honor.

The Court: You would still do that?

The Defendant: Yes, Your Honor.

The Court: And why is that again?

15

The Defendant: Because I feel like I can rep myself -- I can represent myself better.

The Court: All right. So you are not asking at this time, that the Court affords you another opportunity to be represented by counsel other than [defense counsel]?

The Defendant: No, Your Honor. I'm asking to represent myself, but exert my Sixth Amendment to be simultaneously represented, I mean, or assisted by counsel, but not [defense counsel].

The Court: Okay. I'm not willing to afford you that, sir, and I don't know, in fact, that you're entitled to all of that. But what I am asking you right now, Mr. Woodard –

The Defendant: Yes, Your Honor.

The Court: – is whether you're asking the Court for the opportunity to be represented by someone else other than [defense counsel]?

The Defendant: No, Your Honor. I'm not.

The Court: Are you sure?

The Defendant: Yes, Your Honor.

The Court: And so I don't believe you. Because just a moment ago, you asked that I remove [defense counsel], appoint someone else to sit second chair.

The Defendant: Your Honor, if I may speak?

The Court: Yeah.

The Defendant: Please? Okay. As a person – as a person, I don't have an issue with [defense counsel]. I don't know him as a person. But, as far as my legal things are concerned, there is a major issue. There's been a breakdown in communication. There is no communication, Your Honor, and I do not feel like [defense counsel] is going to represent me. Therefore, I would place myself at – to this Court, Your Honor, to represent myself. The prosecution is trying to give me life, and I feel like I do not deserve life because this whole case was an accident.

The Court: Okay, So you're going – and you're drifting a little bit further off than –

The Defendant: Okay. I'm sorry, Your Honor.

The Court: – what's necessary to be responsive to my question.

The Defendant: I feel like I can represent myself better.

17

The Court: Okay. So you are not asking, Mr. Woodard and I'm going to ask you in maybe a variation of what I've asked you already. So you're not asking that I remove [defense counsel] from your case and appoint someone else?

The Defendant: I'm just asking to represent myself, Your Honor.

At this point, the trial court began posing questions to Woodard regarding his mental health and explaining to him, as required by *Faretta*,[21] all the disadvantages of self-representation, as well as the rights he was forgoing by proceeding in such a manner. The trial court then went on to explain to Woodard that it was willing to appoint new counsel to represent him and further explained what such representation would entail throughout the course of a trial and sentencing. After doing so, the court asked as follows:

The Court: And notwithstanding all of that, Mr. Woodard, you are not willing to accept this Court's offer to appoint someone else other than [defense counsel] to represent you?

---

[21] *See Faretta*, 422 U.S. at 835-36 (III) (A) (holding that if a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the request must be followed by a hearing to ensure the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open").

The Defendant: I would accept it, but I want to represent myself also.

Deciding to shift the questioning, the trial court asked Woodard if he understood all the charges facing him, the possible sentences if he were to be found guilty, and whether he had been threatened or promised anything for waiving his right to representation by counsel. Then, after Woodard replied that he had not been threatened or promised anything for his waiver, the trial court concluded its inquiry as follows:

The Court: Do you specifically waive your right to have a lawyer representing you in this case, Mr. Woodard?

The Defendant: Yes, Your Honor.

The Court: Mr. Woodard, are you under the influence of any drugs, medicines or intoxicants of any kind?

The Defendant: No, ma'am.

The Court: Okay. And so, I'll just let the record reflect that I believe that I have asked you all the questions that – that I'm required to ask you, to make a determination on whether or not, Mr. Woodard, you are making a knowing, intelligent, and voluntary waiver of your right to counsel.

What I am going to do is withhold that finding until we get together again. In the meantime, what I'm going to ask is that the public defender's office conflict this case out to other counsel, because whoever is on this case will be sitting second chair. And because of what I've heard here today, would indicate to me that [defense counsel] should not be the one sitting second chair.

Although, I know you to be a very esteemed attorney, and have done excellent work for years in this courtroom. And so while I'm surprised that Mr. Woodard wouldn't want to have you on the case, I will grant his wishes and remove you from the case once it's conflicted out.

So let's get it conflicted out relatively soon, because I would like to have that other attorney have an opportunity to, at least, consult with the State, get all of the discovery from you, and [be] made aware of what the recommendation is that expires on the 5th of October.

[Defense counsel]: We'll do that –

The Court: Okay?

[Defense counsel]: – today, Your Honor.

The Court: And so what I'm going to ask is that, if your office could report to my staff by COB Friday, as to who it's being conflicted out to, that would be highly appreciated, and I will have them contact

20

them to make sure that the entry is on the way, and that they go over and speak with Mr. Woodard next week.

You understand what's going to happen now, Mr. Woodard?

The Defendant: Yes, Your Honor, I do.

The Court: Okay. And so, when we get together at calendar call, I'll bring you out toward the end of calendar call –

The Defendant: Yes, Your Honor.

The Court: To find out how it is that you're wishing to proceed.

The Defendant: Yes, Your Honor.

The Court: So once you've spoken to that lawyer, and you decide to let them represent you, then, that will be fine. You can let me know that. And, if not, that will be fine, too.

The Defendant: Yes, Your Honor.

The trial court then concluded the hearing by explaining to Woodard that he could confer with the new counsel being appointed regarding motions he wanted to file and could decide at the calendar call on October 5th if he still wanted to file those

21

motions *pro se*. That calendar call, apparently, was not transcribed. And on January 8, 2018, the trial commenced with Woodard being represented by new counsel.

Woodard now argues that—in light of the colloquy quoted at length *supra*—he unequivocally asserted his right to represent himself at trial, and that the trial court erred in ultimately failing to allow him to do so. But although Woodard stated several times that he wanted to represent himself, he also acknowledged that his dissatisfaction with his current defense counsel prompted this request. Further muddying the issue, Woodard also claimed during the hearing that he wanted to represent himself *and* assert his constitutional right "to be simultaneously represented" or "assisted by counsel, but not [current defense counsel]." Subsequently, after the trial court explained what representation by appointed counsel would entail and asked Woodard if he was not willing to accept the court's offer to appoint someone other than his current defense counsel to represent him, Woodard confusingly replied, "I would accept it, but I want to represent myself also." Moreover, despite Woodard's apparent agreement to waive representation, when the trial court explained that it, nonetheless, would appoint new counsel, have that counsel meet with Woodard, and then ask him again—at the next calendar call—how he wished to proceed, Woodard affirmatively responded, "yes." Finally, and

importantly, Woodard then "went to trial with counsel without any objection or even mention of it to the trial court and only complained after trial."[22] And acquiescence to the "substantial participation by counsel at trial obliterates any claim that such participation in question deprived [Woodard] of control over his own defense."[23] Thus, given these particular circumstances, Woodard did not assert an *unequivocal* request to represent himself, and the trial court did not err in how it handled this matter.[24]

---

[22] *Oliver*, 305 Ga. at 680 (2).

[23] *Id*. at 680-81 (2) (cleaned up); *accord McKaskle*, 465 U. S. at 182.

[24] *See Danenberg v. State*, 291 Ga. 439, 441 (2) (729 SE2d 315) (2012) (holding that "[i]nasmuch as appellant's handwritten note sought to dismiss trial counsel and replace them with retained counsel, a public defender, or himself, appellant's communication was not an unequivocal assertion of his right to represent himself"); *Thaxton*, 260 Ga. at 142 (2) (holding that while defendant's remarks may be construed as an expression of dissatisfaction with his attorney, they cannot be construed as an assertion, much less an unequivocal assertion, of his right to represent himself); *Cooper v. State*, 350 Ga. App. 365, 367 (829 SE2d 433) (2019) ("Throughout the discussion with the trial court, Cooper never clearly and definitively said that he wanted to relieve counsel *and proceed to trial on his own*") (emphasis supplied); *Hillsman*, 341 Ga. App. at 549-50 (4) (finding that because there was no evidence that defendant made an unequivocal request to represent himself, trial court did not err in failing to conduct a *Faretta* hearing); *Crutchfield v. State*, 269 Ga. App. 69, 71-72 (2) (603 SE2d 462) (2004) (finding that defendant's refusal to answer when trial court explicitly asked if he wanted to fire his counsel and defendant's additional expressions of dissatisfaction with his attorney did not constitute an unequivocal assertion to represent himself); *Howard v. State*, 251 Ga. App. 243, 244-45 (6) (553

23

For all these reasons, we affirm Woodard's convictions in part, but because the aggravated-battery counts should have merged with the count for kidnapping with bodily injury for purposes of sentencing, we vacate his sentence in part and remand to the trial court for resentencing.

*Judgment affirmed in part, sentence vacated, and case remanded with direction. Gobeil and Hodges, JJ., concur*.

SE2d 862) (2001) (holding that defendant's attempt to fire trial counsel a few days before the start of trial because he disagreed with how counsel was handling the case and his request that the court appoint new counsel did not constitute an unequivocal request to represent himself). *Cf. Smith*, 332 Ga. App. at 852-54 (2) (holding that trial court erred in failing to conduct a *Faretta* hearing when defendant reiterated several times to the trial court that he wished to represent himself and did not want his appointed counsel to try the case on his behalf); *Bettis v. State*, 328 Ga. App. 167, 169-71 (1) (761 SE2d 570) (2014) (holding that trial court erred in failing to conduct a *Faretta* hearing when defendant flatly requested that the court allow him to represent himself).